**Ex parte David Wayne McKAY.**

No. 70850.

Court of Criminal Appeals of Texas, En Banc.

Sept. 12, 1990.

Rehearing Denied Dec. 4, 1991.

479

B. Prater Monning, III, Dallas, for appellant.

John Vance, Dist. Atty., Teresa Tolle, Asst. Dist. Atty., Dallas, Robert Huttash, State's Atty., Matthew W. Paul, Asst. State's Atty., Austin, for the State.

## OPINION

MILLER, Judge.

This is a post-conviction application for writ of habeas corpus relief pursuant to Article 11.07, V.A.C.C.P. Applicant was convicted by a jury on a plea of not guilty of capital murder. See V.T.C.A., Penal Code Section 19.03(a)(2). On August 5, 1982, the trial court imposed the death penalty upon the jury's affirmative answers to the three special issues submitted pursuant to Art. 37.071, V.A.C.C.P. On direct appeal, applicant's conviction was affirmed by this Court on October 2, 1985, in a published opinion. *McKay v. State,* 707 S.W.2d 23 (Tex.Crim.App.1985), reh'g denied.

Following applicant's appeal, his petition for writ of certiorari was denied by the United States Supreme Court on October 6, 1986. *McKay v. Texas*, 479 U.S. 871, 107 S.Ct. 239, 93 L.Ed.2d 164 (1986). Applicant was then denied state habeas corpus relief on February 27, 1987, and again on March 3, 1987. Finally, applicant's petition for writ of habeas corpus presented in federal district court was dismissed by agreement on November 3, 1988, in order to permit applicant to file an amended application for writ of habeas corpus in this Court. We granted applicant's application solely on the issue of whether the trial court erred in its ruling restricting the scope of voir dire examination.[1] Applicant contends that his ability to question prospective jurors was limited in such a fashion as to violate his rights under the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Texas Constitution.

▪ No evidentiary hearing was held in this matter. The trial judge entered an order expressly adopting the proposed findings of fact and conclusions of law submitted by the State in its response to applicant's writ application. Those findings conclude that applicant's application for habeas corpus relief was without merit and that applicant was not denied any state or federal constitutional rights. We are not bound by the trial judge's conclusions, however, if unsupported by the record. *Ex Parte Adams*, 768 S.W.2d 281, 288 (Tex.Cr.App. 1989). The parties in the present case cite identical portions of the record with regard to the grounds for relief presented by applicant, and we are unable to find any discrepancies. Based upon the record so presented, we find that the trial court's conclusions are unsupported. We further find, for the reasons stated, that applicant's claim is cognizable under habeas corpus. We will grant applicant relief.

The record shows that on July 15, 1982, during the course of applicant's trial, the trial judge instructed the attorneys "not to inquire of the prospective juror's interpretation, definition or understanding of terms such as deliberately, probability, reasonable doubt, criminal acts of violence." The trial judge went on to say that the terms "are not statutorily defined, and they are to be taken as understood in common language, and the jurors are supposed to know such common meanings.... And therefore I will ask you not to question them along those lines." After applicant had exercised his fifth peremptory challenge to prospective juror Robert Berg, the State had exercised six (6) peremptory challenges, and four jurors had been selected, the record further reflects the following colloquy:

> THE COURT: On the record. Counsel for the State has inquired of the Court to be a bit more specific here in its ruling to whether or not defense counsel is prohibited from asking the question, 'If you have found someone guilty of intentionally killing another human being without justification, could you ever answer no to the question which asks was it done deliberately?'
>
> While this is not specifically asking the definition of the common term deliberately, I feel this is indirectly doing what the Court is asking you not to do directly, and I will ask you not to ask that question.
>
> MR. HARRISON [Defense Counsel]: Your Honor, to which we—may we have a running objection to the Court's ruling.
>
> THE COURT: Yes, you may, and I overrule it.

Following the above ruling, thirty-five (35) prospective jurors were interrogated.

Applicant maintains that the above ruling unduly and unconstitutionally limited his ability to properly question prospective jurors. Although applicant's attorney preserved any error by making a running objection[2] to the trial court's ruling, applicant

---

1. Applicant raises ten (10) grounds for relief in his writ application.

2. We recently addressed the propriety of running objections to preserve error in *Sattiewhite*

*v. State*, 786 S.W.2d 271 (Tex.Cr.App.1989), wherein we held "as long as the running objection constituted timely objection, stating the specific grounds for the ruling, the movement desired the court to make (if the specific grounds

did not contest the ruling on direct appeal. Thus, before reaching the merits of applicant's claim, we must decide whether this issue may be raised in a death penalty case for the first time by application for a writ of habeas corpus.

It is well-settled in this state that "[t]raditionally, habeas corpus is available only to review jurisdictional defects ... or denials of fundamental or constitutional rights." *Ex Parte Banks,* 769 S.W.2d 539, 540 (Tex.Crim.App.1989) (citations omitted). In *Banks,* we held that where the applicant complains that a venireman was improperly excused following a challenge for cause pursuant to Art. 35.16, V.A.C.C.P., such claim could not be asserted via habeas corpus since it involves a procedural statute and not a jurisdictional defect or constitutional consideration. *Banks,* 769 S.W.2d at 540.

 However, not all constitutional errors cause the level of harm necessary to warrant cognizability under a writ of habeas corpus. We have held that although a habeas corpus application may be predicated on violations of state constitutional rights, the claim may not be cognizable via habeas corpus when the alleged error, if committed, is nevertheless subject to a harm analysis under Texas Rule of Appellate Procedure 81(b)(2). *Ex parte Truong,* 770 S.W.2d 810 (Tex.Cr.App.1989); *Ex parte Dutchover,* 779 S.W.2d 76 (Tex.Cr. App.1989). As stated in *Truong:*

> Therefore, contrary to the contention advanced by applicant, this Court has determined that giving the unconstitutional instruction on parole law did not render the verdict of the jury assessing punishment invalid nor the judgment based in part of that verdict void. To give the instruction may be harmful indeed, but is no more than reversible error. That is to say, the judgment is at best voidable, and as such is not subject to a collateral attack by writ of habeas corpus.

Inasmuch as applicant will be unable to demonstrate that including an uncon-

stitutional instruction on parole law in a charge on punishment ... so fatally infected the entire punishment proceeding as to render the resultant sentence invalid and judgment void, ... we hold that his "Rose claim" of error is not cognizable in a postconviction habeas corpus proceeding, and thus will not be entertained, under Article 11.07.

*Truong,* 770 S.W.2d at 813. Implicit in these holdings is that habeas corpus is limited to those constitutional errors, at least those pursuant to the state constitution, that are so exceptional or fundamental that they are not susceptible to a harm analysis, or that so fatally infected the entire [punishment] proceeding as to render the resultant sentence invalid and judgment void.

Numerous other cases have discussed the merits of habeas corpus claims that certain errors have fatally infected the proceedings. *Ex parte Maldonado,* 688 S.W.2d 114, 116 (Tex.Cr.App.1985) (charge error that so infected the trial procedure that applicant was denied a fair and impartial trial is cognizable on habeas corpus); *Ex parte Coleman,* 599 S.W.2d 305 (Tex. Cr.App.1978) (charge error that infected the entire trial such that the resulting conviction violates due process is cognizable on habeas corpus); *Ex Parte Aaron,* 691 S.W.2d 680 (Tex.Cr.App.1985) (failure of the State or trial judge to sign waiver of jury contemplated in Articles 1.13 or 1.15, V.A.C.C.P., is per se not cognizable if evidence shows those parties' consent or approval); *Ex parte Ashcraft,* 565 S.W.2d 926 (Tex.Cr.App.1978) (sufficiency of evidence not cognizable); *Ex parte Moffett,* 542 S.W.2d 184 (Tex.Cr.App.1976) (allegation of no evidence is cognizable on writ of habeas corpus because it results in a violation of due process); See also *Ex parte Brandley,* 781 S.W.2d 886 (Tex.Cr.App.1989) (Campbell, J., dissenting) (newly discovered evidence not fit subject matter for the exercise of state or federal habeas corpus); etc.

This list is anything but exhaustive, but suffice it to say that while there is no

---

were not apparent from the context of the running objection) then the error should be deemed

preserved by an appellate court." 786 S.W.2d at 283, n. 4.

bright line rule showing just which errors are or are not "a violation of due process cognizable on writ of habeas corpus", are or are not "so exceptional or fundamental that they are not susceptible to a harm analysis", or have or have not "so fatally infected the entire [punishment] proceeding as to render the resultant sentence invalid and judgment void", certainly many errors do fall into these "categories" and thus are cognizable on writ of habeas corpus despite the principle that the great writ should not be used as a substitute for appeal. *Banks,* 769 S.W.2d 539. The question to be answered then is: Does the voir dire error of the case at bar fall into one or more of these "categories"?

■ The constitutionally guaranteed right to counsel encompasses the right to question prospective jurors in order to intelligently and effectually exercise peremptory challenges and challenges for cause during the jury selection process. *Mathis v. State,* 167 Tex.Crim. 627, 322 S.W.2d 629, 631 (Tex.Cr.App.1959); *Gardner v. State,* 730 S.W.2d 675, 689 (Tex.Cr.App. 1987); *Smith v. State,* 703 S.W.2d 641, 643 (Tex.Cr.App.1985); and cases cited therein. To that end, trial judges should allow defendants much leeway in questioning a jury panel during voir dire. At the same time, however, we have afforded trial courts the ability to control the voir dire process if sound discretion would compel a trial judge nevertheless to restrict the questioning in the interest of conducting an orderly and expeditious trial. See, e.g., *Smith v. State,* 513 S.W.2d 823 (Tex.Cr. App.1974) and *McManus v. State,* 591 S.W.2d 505, 520 (Tex.Cr.App.1980) (not abuse of discretion to disallow duplicitous questions); *Clark v. State,* 608 S.W.2d 667, 669 (Tex.Cr.App.1980) (trial court can set reasonable time limits); *Abron v. State,* 523 S.W.2d 405, 408 (Tex.Cr.App.1975) (trial court can set reasonable time limits, restrict repetitious or vexatious questions, restrict questions asked in improper form, restrict questions directed at personal habits of jurors). Accordingly, a trial court's decision to limit questioning during voir

dire may be reviewed only to determine whether such a restraint amounts to an abuse of discretion. *Smith,* 703 S.W.2d at 643.

We reaffirmed the test for reviewing a trial court's restriction of voir dire in *Smith* at 643:

... [T]o show an abuse of discretion, a defendant must demonstrate that the question he sought to ask was proper. If the question was proper and the defendant was prevented from asking it, then harm is presumed because the defendant could not intelligently exercise his peremptory challenges without the information gained from an answer.

■ A question is proper if its purpose is to discover a juror's views on an issue applicable to the case. *Smith,* 513 S.W.2d at 826 and *Mathis,* 322 S.W.2d at 632. We have specifically held that whether a juror is challengeable for cause on the grounds that he or she is biased against any of the law upon which the defendant may rely is an applicable issue to the case and queries relating thereto are proper. *Smith,* 513 S.W.2d at 826 (defendant sought to ask the jury panel whether they could consider probation as a proper punishment in a prosecution for murder).

In *Martinez v. State,* 763 S.W.2d 413 (Tex.Cr.App.1988), we held that the juror who, upon returning a guilty verdict in a capital murder case, would automatically answer "yes" to special issue one, inquiring whether the defendant's conduct was deliberate, was challengeable for cause for harboring a bias against the law since "such a position manifests an inability, once the issue of guilt has been resolved against an accused, to reconsider guilt evidence for whatever probative value it will have in the particular context of the first punishment issue." *Martinez,* 763 S.W.2d at 415.

In *Gardner*[3], we held that:

Ordinarily we would be constrained to hold that ... it is not an abuse of discretion to prohibit questioning of veniremen regarding terms which, having no statutory definition, are left to the juror's

---

3. The instant case was tried in 1982, five years before our decision in *Gardner* was rendered.

understanding based upon common meaning and usage, at least so long as the prohibition is imposed in the interest of reasonably limiting the already lengthy capital voir dire procedure. On the facts of the instant case, however, we find that any interest the trial court might have had in limiting voir dire was clearly outweighed by appellant's right to interrogate venireman Kirklin [concerning whether she would automatically answer special issue one affirmatively after having found that the defendant intentionally committed capital murder].

\* \* \* \* \* \*

Footnote 7. Counsel for the appellant and the State were apparently of the view that they were legally prevented from ever inquiring as to a venireman's understanding of the meaning of the "deliberate." We know of no authority in statute or caselaw to substantiate this notion.

*Id.* at 684 and 688. Therefore, an attempt to ascertain whether a juror maintains such a position is unquestionably a proper matter for inquiry during a capital murder voir dire.

■ In the present case, applicant's desired line of questioning was proper. In asking whether a prospective juror could ever answer "no" to special issue one upon returning a guilty verdict, applicant effectively sought to determine if the juror would automatically answer "yes", thereby demonstrating a bias against the law and grounds for a challenge for cause. We have consistently held that the right to representation as afforded under Article I, Section 10 of the Texas Constitution includes the right to properly question prospective jurors during voir dire in order to effectively exercise peremptory challenges or to establish a predicate for a challenge for cause. *Gardner*, 730 S.W.2d 675, *Smith*, 703 S.W.2d 641 and *Mathis*, 322 S.W.2d 629. Thus, applicant's right to question prospective jurors was limited in such a way as to violate his constitutional rights. We hold, therefore, that the trial court abused its discretion in disallowing applicant's question.

■ The State contends that even if "constitutional" error was committed by the trial judge, such error was harmless, notwithstanding the language of *Smith*, 703 S.W.2d at 643, which presumes harm once it is determined that the defendant was prevented from asking a proper question. The State relies on *Gardner*, 730 S.W.2d 675, wherein we found an abuse of discretion in disallowing the defendant to pose a similar question to the one in the present case, yet found no harm. We distinguished the facts of *Gardner* from cases like *Smith* and the present case in *Gardner* itself, stating:

> In *Smith v. State*, 703 S.W.2d 641, *Powell v. State* [631 S.W.2d 169 (Tex.Cr.App. 1982)], the two Mathis cases [*Mathis v. State*, 576 S.W.2d 835 (Tex.Cr.App.1979) and *Mathis v. State*, 167 Tex.Cr.R. 627, 322 S.W:2d 629 (1959)], and in *Campbell v. State*, 685 S.W.2d 23 (Tex.Cr.App. 1985), the defendant was prevented from posing a proper question to the entire jury panel, not simply a single venireman. *In that event it is clear that encroachment upon the right to representation of counsel under Art. I, Section 10 of the Texas Constitution, see Mathis, 322 S.W.2d at 631, has infected the entire process of jury selection. The harm is manifest.* In *Smith v. State*, 513 S.W.2d 823, the defendant complained he was prevented from posing a proper question during the individual voir dire of twelve separate venireman [sic]. Again, in that event the harm would be evident.
>
> By contrast, in this case the error infected the voir dire of but a single venireman. Because appellant was awarded additional peremptories, the infection was cured.

*Gardner*, 730 S.W.2d at 690, n. 9 (emphasis added).

In the present case, applicant was prevented from asking a proper question of thirty-five veniremen, approximately half of the entire venire. The trial court abused its discretion by improperly limiting the scope of voir dire questioning. Since applicant was not allowed to question thirty-five

veniremen and thirty-five additional peremptories were not granted, *Gardner* is clearly distinguishable, and the harm is manifest.

Still, does this "constitutional" error rise to the level of error cognizable by writ of habeas corpus?[4] In further considering this question, we remember that in dealing with procedures for imposing the death penalty, the United States Supreme Court has invariably recognized the heightened need for assurances that the requirements of due process are followed in a capital case. In *Woodson v. North Carolina,* 428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976), a majority of the Supreme Court held that the North Carolina mandatory death penalty statute was unconstitutional because it "fail[ed] to allow the particularized consideration of relevant aspects of the character and record of each convicted defendant before the imposition upon him of a sentence of death," observing that "death is a punishment different from all other sanctions in kind rather than degree." *Woodson* at 2991. The Court further stated:

> While the prevailing practice of individualizing sentencing determinations generally reflects simply enlightened policy rather than a constitutional imperative, we believe that in capital cases the fundamental respect for humanity underlying the Eighth Amendment ... requires consideration of the character and record of the individual offender and the circumstances of the particular offense as a constitutionally indispensable part of the process of inflicting the penalty of death.

> This conclusion rests squarely on the predicate that the penalty of death is qualitatively different from a sentence of imprisonment, however long. Death, in its finality, differs more from life imprisonment than a 100–year prison term differs from only a year or two. Because

of that qualitative difference, there is a corresponding difference in the need for reliability in the determination that death is the appropriate punishment in a specific case.

*Id.*

In *Beck v. Alabama,* 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980), the Supreme Court granted certiorari to determine whether a sentence of death could be constitutionally imposed after a jury verdict of guilt in a capital case when the jury was not permitted to consider a lesser included noncapital offense and when the evidence would have supported such a verdict. The Court again recognized that "there is a significant constitutional difference between the death penalty and lesser punishments" and held that "if the unavailability of a lesser included offense instruction enhances the risk of unwarranted conviction, Alabama is constitutionally prohibited from withdrawing that option from the jury in a capital case." *Beck* at 2390. More significantly, however, the Court noted that "we need not and do not decide whether the Due Process Clause would require the giving of such instructions in a *noncapital* case." *Beck* at 2390, fn. 14 (emphasis added), again implicitly emphasizing a difference in the severity of punishment for capital offenses and lesser offenses.

In *Gardner v. Florida,* 430 U.S. 349, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977), the Supreme Court reviewed the constitutionality of a trial judge's use of a presentence investigative report in deciding to overrule a jury recommendation that a defendant get a life sentence for first-degree murder, instead imposing death. The report was undisclosed to the defendant. The Supreme Court held that in light of the constitutional developments recognizing that death is a different kind of punishment

---

**4.** The concurring opinion suggests that at this juncture we should determine "whether by any other measure the error is such as to void the conviction," concurring opinion, page 486. We are then faulted for not undertaking this admittedly daunting "enterprise." We are given no hint as to the nature or character of these "other measures." We note that criticism of this Court's past attempts to elucidate the concept of habeas cognizability is as easy as the attempt to define it has been difficult (see discussion, supra, opinion at page 481–82). We would have appreciated the concurring opinion had the criticism been more constructive and suggested just what the concept of habeas cognizability should mean in the future.

from any other and that the sentencing process, as well as the trial itself, must satisfy due process, the use of the undisclosed information was not constitutional. In its discussion of the justifications offered by the State, the Supreme Court rejected several reasons on the ground that while the use of such information may satisfy the requirements of due process in a noncapital case, its use was not constitutional in a case where the death penalty is invoked. *Id.*

We find the reasoning in the above-cited cases compelling in the instant case. Applicant was tried for and convicted of capital murder, the only offense under our penal code subjecting a defendant to the possibility of receiving the death penalty. Indeed, applicant was sentenced to die. In reviewing the constitutionality of our sentencing scheme in death penalty cases, the Supreme Court of the United States held that because the submission of the special issues provided in Art. 37.071, V.A.C.C.P., guided the jury in determining whether to impose death, such a scheme was constitutional. *Jurek v. Texas,* 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976). With regard to special issue number one specifically, this Court held that the question of deliberateness posed in special issue one did not turn upon a finding that a defendant committed the capital offense "intentionally or knowingly." *Heckert v. State,* 612 S.W.2d 549 (Tex.Cr.App.1981). Judge Tom G. Davis explained in *Heckert:*

> If this Court were to adopt appellant's argument that deliberately and intentionally or knowingly were linguistic equivalents, it would render Art. 37.071(b)(1), supra, a nullity. Under such a holding, Art. 37.071(b)(1), supra, would be a useless thing in that a finding of an intentional or knowing murder would be irreconcilable with a finding that the defendant's conduct was not committed deliberately. We will presume that the Legislature would not have enacted Art. 37.-071(b)(1), supra, had it intended for a finding of deliberateness to be based on

the same standard as that of intentional or knowing.

*Id.,* at 552–553.

Thus, a juror who would equate these terms by automatically finding the defendant's conduct deliberate upon a finding that it was intentional or knowing would render special issue one a "nullity." To allow such a juror who is obviously not guided by the special issues in determining punishment would undermine the constitutionality of our sentencing scheme. *Jurek,* 428 U.S. 262, 96 S.Ct. 2950.

As the discussion above reveals, the question applicant sought to ask during voir dire went to the very heart of our capital murder sentencing scheme, and necessarily had an impact on whether this particular jury would automatically, as opposed to discretionarily, answer the special issues affirmatively and require the trial judge to impose a sentence of death. Given the nature of applicant's claim and the heightened need for due process standards to met in death penalty cases, we hold that applicant's claim is cognizable via an application for writ of habeas corpus.

To reiterate: The trial judge committed error in denying the requested voir dire questioning; the error was of a Texas constitutional dimension; this is a capital murder case where the death penalty was imposed; and the error went to the heart of the decision making process used in arriving at the death penalty; thus, in this instance, this type of error is cognizable by writ of habeas corpus. Applicant has supplied facts which prove the error merits relief as required by *Maldonado,* 688 S.W.2d at 116.

Therefore, the relief sought is granted. The judgment in Cause No. 80164 is set aside and applicant is ordered released to the Sheriff of Dallas County to answer the indictment in this cause. A copy of this opinion will be furnished the Texas Department of Criminal Justice, Institutional Division, by the Clerk of this Court.

DAVIS, J., not participating.

BERCHELMANN, J., dissents.

CLINTON, Judge, concurring.

Had applicant raised the present contention in his direct appeal, I would not hesitate to reverse his conviction and remand the cause for new trial. See *Gardner v. State,* 730 S.W.2d 675 (Tex.Cr.App.1987); *Lane v. State,* 743 S.W.2d 617 (Tex.Cr.App. 1987); *Morrow v. State,* 753 S.W.2d 372 (Tex.Cr.App.1988); *Martinez v. State,* 763 S.W.2d 413 (Tex.Cr.App.1988). Concluding that the error committed was one of state constitutional dimension, the plurality grants essentially the same relief today under a post-conviction application for writ of habeas corpus brought pursuant to Article 11.07, V.A.C.C.P. Having alluded to it in passing, the plurality never explains how its disposition today is consistent with the Court's holding in *Ex parte Truong,* 770 S.W.2d 810 (Tex.Cr.App.1989). As I understand its opinion, the plurality believes cognizability of the issue in post-conviction habeas corpus is justified because this is a capital murder conviction, and the United States Supreme Court has held that due process considerations are "heightened" in that context, *vis-a-vis* the Eighth Amendment's prohibition against cruel and unusual punishment. In my view this is another example of this Court's *ad hoc* approach to the question of what issues will be entertained in collateral attack of a conviction suffering no jurisdictional defect as to render it void. See *Ex parte Dutchover,* 779 S.W.2d 76 (Tex.Cr.App.1989) (Clinton, J., concurring).

In *Ex parte Truong,* supra, we essentially held that an allegation of error which, though of state constitutional dimension, is nevertheless subject to a harm analysis under Tex.R.App.Pro., Rule 81(b)(2), "is at best voidable, and as such is not subject to a collateral attack by writ of habeas corpus." 770 S.W.2d at 813. We did not thereby hold, necessarily, that any defect of constitutional dimension that is *not* subject to a harm analysis *will* be cognizable in an 11.07 collateral attack. In *Truong* we held that susceptibility to a harm analysis was one indicator that error did not render a conviction void. That is not to say, however, that this is the exclusive measure for determining whether or not an error voids the conviction. It seems to me that, consistent with *Truong,* if the plurality purports to rely upon error of state constitutional magnitude, it should proceed upon two inquiries. First, it should ask whether the error is subject to a harm analysis.* If the plurality finds it is, then we know the conviction is "at best voidable," *id.,* at 813, and hence, not cognizable on collateral attack. That a given error is *not* subject to a harm analysis, however, does not dispositively establish it is of a nature as to render the conviction void. Finding a harm analysis inapplicable, the plurality would nevertheless have to address the question whether by any other measure the error is such as to void the conviction.

Rather than undertake this admittedly daunting enterprise, the plurality concludes the issue is cognizable for the simple reason that applicant was prosecuted for capital murder. I do not understand how that

---

* In *Gardner v. State,* supra, at 690, n. 9, we held error of the sort at issue here to be "cured" inasmuch as it affected the voir dire of but a single venireman, and the defendant had been granted an additional peremptory challenge. In so ruling we observed that where an accused is prevented from posing a proper question to the entire venire, or to a significant portion thereof, harm is, respectively, "manifest" and "evident." See also *Allridge v. State,* 762 S.W.2d 146, 163 (Tex.Cr.App.1988). In *Morrow v. State,* supra, we held that use of an erroneous hypothetical purportedly to illustrate the distinction between "intentional" and "deliberate" to a substantial number of veniremen "so distorted the lawful course of the whole voir dire that [Morrow] was denied due course of law and effective representation of counsel as guaranteed by Article I,

§§ 19 and 10 of the Texas Constitution." 753 S.W.2d at 376–77. Under the circumstances presented there, we observed, "harm may be presumed." *Id.,* at 376. It strikes me that with error of this kind, as with other kinds, "the record will contain no concrete data from which an appellate court can meaningfully gauge the likelihood that [it] did or did not contribute to the conviction or punishment of the accused." *Roberts v. State,* 784 S.W.2d 430, 435 (Tex.Cr.App.1990). Thus, Rule 81(b)(2), supra, may have no application here. I would not want to say for that reason, however, that the error rendered the conviction void, rendering it cognizable under Article 11.07, supra. *Ex parte Truong,* supra. Finding an error is *not* subject to a harm analysis does not necessarily end the cognizability inquiry.

circumstance translates into instant cognizability in post-conviction collateral attack. Surely the particular ground upon which relief is granted here has no Eighth Amendment component. Article 37.071, V.A.C.C.P., requires that a finding of deliberateness be made before the death penalty may be imposed. Rules of statutory construction demand that "deliberate" be given meaning and significance apart from that attributed to "intentional;" Article 37.071(b)(1), supra, must involve an inquiry discrete from that of whether the murder was committed intentionally. *Heckert v. State*, 612 S.W.2d 549 (Tex.Cr.App.1981); *Fearance v. State*, 620 S.W.2d 577, 584 (Tex.Cr.App.1981). Thus, a juror unable to differentiate "deliberate" at the punishment phase from "intentional" at the guilt phase would deprive a capital accused of due process and due course of law. *Gardner v. State*, supra, at 689. Disallowing questioning tailored to reveal such an inability in a venireman would, by the same token, render assistance of counsel ineffective, inasmuch as it deprives counsel of the chance to establish a possible basis for challenge for cause, *id.*, or, failing that, of intelligent use of his peremptory challenges. *Morrow v. State*, supra. It is doubtful, however, that in our particular capital murder scheme the Eighth Amendment necessarily requires that a "deliberate" finding be made at the punishment phase before a death penalty may be obtained. For Eighth Amendment purposes, V.T.C.A. Penal Code, § 19.03 may already sufficiently narrow the class of death-eligible offenders. See *Lowenfield v. Phelps*, 484 U.S. 231, 108 S.Ct. 546, 98 L.Ed.2d 568 (1988). Thus, the plurality proceeds upon no more than the premise, it seems to me, that under the Eighth Amendment "more process is due" capital murder defendants. But if that is enough to bestow cognizability upon a claim on collateral attack, I do not understand why the applicant in *Ex parte Banks*, 769 S.W.2d 539 (Tex.Cr.App. 1989), did not have an equally cognizable claim. Banks was, after all, a capital murder defendant too. The plurality's criteria are entirely too whimsical for me.

I had hoped the Court had begun to develop a more coherent doctrine of cognizability at least of state, if not also of federal, constitutional claims under Article 11.07, supra. *Ex parte Truong*, supra. See *Ex parte Dutchover*, supra (Clinton, J., concurring); *Ex parte Crispen*, 777 S.W.2d 103 (Tex.Cr.App.1989) (Clinton, J., concurring). It seems to me what the plurality does today potentially undermines what progress we have made.

For my own part, I would avoid the question altogether of whether applicant is entitled to relief under the Texas Constitution, and proceed, instead, upon the Sixth Amendment to the United States Constitution. For in my view, applicant was deprived of his federal constitutional right to effective assistance of counsel just as surely as he was deprived of his identical right under Article I, § 10.

I am not altogether sanguine about granting relief under a claim I do not regard as particularly "exceptional" or "fundamental," notwithstanding its federal constitutional dimension. See *Ex parte Crispen*, supra, at 109 (Clinton, J., concurring). Moreover, the error not being "exceptional" in nature, applicant should be made to explain the reason he could not have raised this contention in due course of his direct appeal. *Ex parte Dutchover*, supra, at 79 (Clinton, J., concurring). As yet, however, this perspective has not prevailed on the Court. Under current law as I understand it, subject to the requirements that in some instances it be properly preserved in the trial court, *Ex parte Crispen*, supra, and that in any event it be properly pled in the application for writ of habeas corpus in this Court, *Ex parte Dutchover*, supra, any defect of federal constitutional magnitude may be remedied by way of a collateral proceeding brought under Article 11.07, supra. *Ex parte Banks*, supra, at 540, and cases cited. Accordingly, I would grant relief in this cause on the basis of a violation of applicant's Sixth Amendment right to effective assistance of counsel.

Although I cannot join the plurality opinion, I therefore concur that relief should be granted.

McCORMICK, P.J., and CAMPBELL and WHITE, JJ., join in this opinion.

## OPINION TO DENIAL OF STATE'S MOTION FOR REHEARING

CLINTON, Judge, dissenting.

On original submission in this cause a three judge plurality opinion held that failure to allow questioning of veniremen regarding their ability to distinguish "intentional" from "deliberate" was error of state constitutional magnitude. Disallowing the question to a significant portion of the venire was held to violate applicant's right to effective counsel under Article I, § 10 of the Texas Constitution. Because this inquiry "went to the very heart of our capital murder sentencing scheme," and because of "the heightened need for due process standards" in capital cases, the plurality held this error cognizable under Article 11.07, V.A.C.C.P. Op. at 485. It is cognizable, the plurality held, notwithstanding our holding in Ex parte Truong, 770 S.W.2d 810 (Tex.Cr.App.1989), that errors of state constitutional dimension that are subject to a harm analysis are not cognizable in post conviction habeas corpus.

I filed a concurring opinion in this cause, in which three judges joined. There I opined that in context of the state constitutional error that occurred here, a harm analysis "may have no application[.]" Op. at 486, n. *. That being so, the limitation on cognizability expressly announced in Truong would not apply. But I still believe that "[f]inding an error is not subject to a harm analysis does not necessarily end the cognizability inquiry." Id. Neither my opinion, nor as I understand it, the plurality's, addressed the question of what errors of state constitutional dimension not subject to a harm analysis may nevertheless not be cognizable under Article 11.07, supra. The plurality did not address the question because it believed the Eighth Amendment principle that "more-process-is-due" to a capital defendant rendered the issue cognizable. I rejected that approach. Instead, I avoided the question of cognizability of state constitutional error altogether by positing that relief could be granted for the same error, under the guise of ineffective counsel as guaranteed by the Sixth Amendment. Since that is an error of federal constitutional dimension, it is cognizable under existing precedent whether subject to a harm analysis or not. See Ex parte Banks, 769 S.W.2d 539 (Tex.Cr. App.1989). On that basis I concurred in the result. Judge Berchelmann dissented without opinion. Judge Davis did not participate.

In his motion for rehearing the State Prosecuting Attorney contends, inter alia, that the concurring opinion erred in assuming there is a Sixth Amendment claim of ineffective assistance of counsel comparable to this Court's holdings that prevention of effective voir dire can violate the right to representation of counsel under Article I, § 10, supra. See, e.g., Mathis v. State, 167 Tex.Crim. 627, 322 S.W.2d 629 (1959). In fact, there is no comparable Sixth Amendment claim, or at least none that has been recognized in the federal courts. When treating voir dire issues the federal caselaw mostly speaks in terms of the Sixth Amendment right to an impartial jury, rather than deprivation of the right to effective counsel. Failure to allow questioning of veniremen as to whether they can follow various requirements of the law is not deemed a violation of the right to an impartial jury. E.g., Moreno v. Estelle, 717 F.2d 171, at 178–79 (CA5 1983); King v. Lynaugh, 850 F.2d 1055 (CA5 1988). Only one case that I found addresses at any length the question of inadequate voir dire from the standpoint of violation of effective counsel. In Milton v. Procunier, 744 F.2d 1091, 1095–97 (CA5 1984), the Fifth Circuit held that disallowing questions to veniremen as to their understandings of the meaning of the word "deliberate" did not so disable trial counsel as to render him ineffective for Sixth Amendment purposes. This is very close to the contention applicant raised on original submission here. See also Esquivel v. McCotter, 777 F.2d 956, at 957 (CA5 1985); Griffin v. Lynaugh, 823 F.2d 856, at 864–65 (CA5 1987). The United States Supreme Court denied certiorari in all of these cases.

Moreover, upon further reflection I cannot imagine any reason the "prejudice"

prong of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), would not come to bear on such a Sixth Amendment claim of ineffectiveness of counsel. It would not seem to fit any of the categories for which the Supreme Court has held a prejudice analysis unnecessary. See *United States v. Cronic*, 466 U.S. 648, at 659 & n. 25, 104 S.Ct. 2039, at 2047, 80 L.Ed.2d 657, at 668 (1984). On the facts of the present case, as set out in the opinion on direct appeal, *McKay v. State*, 707 S.W.2d 23, at 27–28 (Tex.Cr.App.1985), a jury could readily find appellant acted, not just deliberately, but *with premeditation*, which is more than Article 37.-071(b)(1), V.A.C.C.P., requires. *Russell v. State*, 665 S.W.2d 771, at 779–780 (Tex.Cr.App.1983). Given this circumstance, it does not seem reasonably probable that, but for the failure to allow questions as to the difference between the terms "intentional" and "deliberate," the first special issue would have been answered differently. *Strickland v. Washington*, 466 U.S. at 694, S.Ct. at 2068, L.Ed.2d at 698.

In short, it has been demonstrated to my satisfaction that it was a mistake to rely on the Sixth Amendment as a source of post conviction habeas corpus relief in this cause. The error is purely of state constitutional dimension. Only the three judge plurality opinion explains why this state constitutional error is cognizable under Article 11.07, supra, *Ex parte Truong* notwithstanding. I, and presumably the three judges who joined my concurring opinion, have rejected the plurality's explanation. Presumably Judge Berchelmann rejected it too. That means a majority of the Court has yet to agree that relief is available on collateral attack for the only error presented here—violation of Article I, § 10, supra. Until we address that issue we cannot grant relief.

Denial of intelligent use of peremptory challenges is not ordinarily susceptible to a harm analysis. See *Nunfio v. State*, 808 S.W.2d 482 (Tex.Cr.App.1991). Cf. *Gardner v. State*, 730 S.W.2d 675, at 690 n. 9 (Tex.Cr.App.1987). Nevertheless, I would not hold it cognizable under Article 11.07, supra. Particularly if we reject the fiction that constitutional error *per se* renders a conviction "void," see *Ex parte Crispen*, 777 S.W.2d 103, at 108 (Tex.Cr.App.1989) (Clinton, J., concurring), we should at least be able to say that an error is "of sufficient character or magnitude that we are obliged to say that our interest in rectifying it overcomes otherwise compelling finality interests" before we make it a basis for collateral relief. *Ex parte Goodman*, 816 S.W.2d 383 (Tex.Cr.App.1991) (Clinton, J., concurring) (slip op. at 3). We have said that denial of intelligent use of peremptory challenges is not subject to a harm analysis, not because the likelihood of harm is so great that a denial of a fair and impartial trial is inevitable, but rather, simply because the nature of the error is such that a meaningful inquiry into harm, *vel non*, cannot be made. See *Nunfio v. State*, supra, at 485 & n. 3; *Roberts v. State*, 784 S.W.2d 430, 435 (Tex.Cr.App.1990). I do not consider the refusal to indulge a harm analysis for this reason, on direct appeal, to be the functional equivalent of declaring that the error rendered the conviction "void," or was otherwise of sufficient magnitude as to justify suspending the State's interest in finality even absent a finding of voidness. I would hold that applicant's claim is not cognizable in a post-conviction, post-appellate collateral attack under Article 11.07, supra. By denying rehearing the Court lets stand an opinion by less than a majority that not only entertains the claim, but grants extraordinary relief in this cause. I respectfully dissent.

CAMPBELL, J., joins.