**Deandre Leon BECK, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 07–97–0447–CR.**

Court of Appeals of Texas, Amarillo.

July 14, 1998.

Discretionary Review Refused Oct. 28, 1998.

Law Offices of James M. Leitner, James M. Leitner, Houston, for appellant.

John B. Holmes, Jr., Eric Kugler, James Alston, Harris County District Attorneys, Houston, for appellee.

Before QUINN and REAVIS JJ., and REYNOLDS,* Senior Justice.

QUINN, Justice.

Deandre Leon Beck, convicted of aggravated robbery, brings this appeal. In one point of error, he argues that he was denied the effective assistance of counsel at trial and cites numerous errors allegedly committed by his trial counsel during voir dire and the guilt/innocence phase of trial as support for his claim. We overrule the point and affirm.

### A.  Purported Mistakes

Appellant alleges that his attorney committed the following errors during trial:

1) counsel failed to voir dire the jury on the range of punishment;

2) counsel did not voir dire the panel members about whether they could consider community supervision as appropriate punishment;

3) counsel failed to voir dire the panel members about why community supervision was available in the case;

4) counsel failed to voir dire the panel members about whether anyone was biased against appellant for being indicted for aggravated robbery;

5) counsel failed to voir dire the panel members about potential bias against blacks;

6) counsel failed to voir dire the panel members regarding whether they could follow the law regarding appellant's presumption of innocence;

7) counsel did not voir dire the panel members regarding whether they were biased in favor of law enforcement officers;

8) counsel did not voir dire the panel "concerning the law as it applied to the credibility of all witnesses as they are brought into court to testify";

9) counsel did not voir dire the panel on "the law of accomplice witnesses";

10) counsel failed to object to testimony regarding appellant's oral statements made while in custody;

11) counsel stipulated to alibi evidence, thus preventing the jury from hearing the same evidence through testimony; and

12) counsel failed to request a jury charge concerning "the law of accomplice witnesses."

### B.  Standard of Review

In any case analyzing the effective assistance of counsel, we begin with the presumption that counsel was effective. *Jackson v. State*, 877 S.W.2d 768, 771 (Tex.Crim.App. 1994) (en banc). We assume counsel's actions and decisions were reasonably professional and that they were motivated by sound trial strategy. *Id.* Moreover, it is the appellant's burden to rebut this presumption via evidence illustrating why trial counsel did what he did. *Jackson v. State*, 877 S.W.2d at 771 (refusing to hold counsel's performance deficient given the absence of evidence concerning counsel's reasons for choosing the course he did); *Rodriguez v. State*, 955 S.W.2d 171, 176–77 (Tex.App.—Amarillo 1997, no pet.); *Davis v. State*, 930 S.W.2d 765, 769 (Tex.App.—Houston [1st Dist.] 1996, pet. ref'd); *Kemp v. State*, 892 S.W.2d 112, 114–15 (Tex.App.—Houston [1st Dist.] 1994, pet. ref'd). Without such evidence, we must assume that he had a legitimate reason for acting as he did. *Id.*

### C.  Application of Standard

#### 1.  Voir Dire

■ As to the failure to voir dire, we note that though appellant moved for new trial he said nothing of counsel's ineffectiveness in the motion. Thus, counsel's motives, if any, for acting as he did went undeveloped. In effect, we have nothing before us evincing the reasons why counsel opted to forego questioning the venire *vis-a-vis* the subjects alluded to by appellant. Given this evidence, the absence of any requirement that counsel delve into the matters raised by appellant, and the presence of evidence illustrating that counsel conducted an active voir dire, we are

---

* Charles L. Reynolds, Chief Justice (Ret.), Seventh    Court of Appeals, sitting by assignment.

unable to say that appellant rebutted the presumption that counsel's actions were reasonably strategic. *Jackson v. State, supra; Rodriguez v. State, supra.*

■ Furthermore, of the issues allegedly neglected by counsel during voir dire, many, in fact, were addressed by the court or the prosecution. Indeed, the court explained to the venire that an indictment was not evidence of guilt and was nothing more than an accusation. While this may not be the equivalent of asking the panel if they had a preconceived bias against appellant since he was indicted, it certainly explained to them that the indictment was only a pleading and not evidence. Additionally, after explaining to the panel that all persons were presumed innocent, the court asked whether anyone on the venire had a problem with that. None did. The State also mentioned that appellant was deemed not guilty until it proved otherwise.

The court also explained the entire penalty range to the jury, including the availability of probation and why it was available. Then, it asked if anyone would be unable to consider probation as a possible option given the crime involved. The State also inquired if anyone on the panel could not consider the full range of punishment and further asked each juror individually if he or she could consider probation.

In addition, the court explained that law enforcement personnel should not be believed over any other witnesses simply because they are police officers. It then asked the panel members to withhold judgment on the credibility of police officers until they testified. This very issue was also addressed by defense counsel during voir dire.

It is true that no one 1) asked if anyone on the venire was prejudiced against blacks or 2) discussed the law of accomplice witnesses. Yet, we cannot say the failure to interject racial issues into the mix was indicative of unreasonable behavior, especially when appellant cites us to nothing which suggests that race played a role in his conviction. To hold otherwise would be to require defense counsel in every case involving a member of a minority group to ask the panel if they were prejudiced against that group. The

constitution does not require us to undertake such micro-management of trial counsel's actions.

■ As to the matter of accomplice witness testimony, it could well be that counsel avoided the subject to deflect attention from his client's written confession of guilt. Indeed, it is quite conceivable that if counsel suggested that the testimony of a purported accomplice was alone insufficient to convict, the State would have responded by citing to the presence of the confession (which confession would have provided the requisite corroboration of the accomplice's testimony). Thus, we are unable to say that avoiding the potential land mine somehow rendered counsel ineffective.

### 2. Oral Statements

■ The "oral statements" in question was actually one in number, and it involved appellant informing an interrogating officer that he was playing basketball at the time of the assault. The remainder of the "statements" consisted of the officer testifying that the details of appellant's involvement in that activity went unmentioned. As to the former, it tended to buttress appellant's alibi that he was elsewhere when the crime occurred, and that may be the very reason why counsel opted not to object to it. In any event, the absence of evidence regarding counsel's reason for remaining silent prohibits us from speculating on whether legitimate trial strategy induced counsel to act as he did. So too does it prevent us from concluding that appellant rebutted the presumption that counsel's actions were induced by legitimate tactic. *Jackson v. State, supra; Rodriguez v. State, supra.*

■ Furthermore, the officer's description of what appellant *did not say* was not a statement as contemplated under article 38.22, section 3 of the Texas Code of Criminal Procedure. So, trial counsel was not obligated to object to those comments on the basis of article 38.22, section 3.

### 3. Stipulation of Evidence

■ As to the stipulation which appellant decries, it involved his counsel presenting

two live witnesses who described appellant's presence at the basketball court at the time in question and then having the State stipulate that three other witnesses would say the same thing. Evidence illustrating why counsel pursued the stipulation is absent from the record; thus, we must presume that he had legitimate reason for doing so. *Jackson v. State, supra; Rodriguez v. State, supra.* Moreover, the stipulation may have been a way to interject the supportive evidence into the record while insulating the witnesses (who were the subject of the stipulation) from impeachment. If so, we can hardly find such an imaginative tactic to be unreasonable.

### 4. Accomplice Witness Testimony

▪ Finally, appellant castigates his trial attorney for failing to request a jury charge "concerning the law of accomplice witnesses." He argues that the jury should have been informed that "it could not convict appellant without corroboration of the testimony from Jermaine Turner," since Turner was an accomplice. Again, evidence concerning counsel's reasons for not doing so was never presented by appellant; so, we must presume counsel had legitimate reasons for opting not to ask for one. Moreover, his legitimate reason could well have been that his client's own written confession (vividly describing his participation in the robbery and sexual assault) provided the requisite corroborative evidence. Given the existence of that confession, counsel may not have wanted an instruction on an irrelevant matter or to bring further attention to the damning confession. In any case, we cannot liken the act to defective conduct.

### D. Conclusion

Claims of ineffective assistance seem to be the newest tactic in the criminal defense arsenal. They are increasingly being offered as a means of attacking the judgment. Yet, it has been our experience that very, very few have any semblance of probative value. Instead, appellants have ignored the admonishment that hindsight and perfection are not the test and have taken to castigating counsel for not doing what they would have done if they were lucky enough to have a record of the completed trial before them. It is enough that attorneys have become the butt of disrespect and incessant jokes within the public eye. But, to have attorneys attack attorneys on utterly baseless grounds, like here, where appellant does not even attempt to question the evidence of his guilt, is unacceptable.

Claiming ineffective assistance is not a fad with little impact. It is nothing less than an effort to label an attorney as unprofessional and malfeasant. For this reason, we urge those who would raise the issue to do so only after careful thought and in-depth analysis.

We affirm the judgment rendered below.