NO. 07-10-00193-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

JUNE 14, 2011

MALCOLM DEAN SCOTT, APPELLANT

v.

THE STATE OF TEXAS, APPELLEE

FROM THE 242ND DISTRICT COURT OF HALE COUNTY;

NO. B18075-0906; HONORABLE EDWARD LEE SELF, JUDGE

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

**MEMORANDUM OPINION**

Appellant, Malcolm Dean Scott, was convicted by jury of aggravated robbery.[1] As punishment, appellant was sentenced to life imprisonment. Appellant now appeals challenging the sufficiency of the evidence, the trial court's exclusion of evidence of appellant's acquittal in a previous robbery trial, and the effectiveness of his trial counsel. We will affirm the trial court's judgment.

---

[1] See Tex. Penal Code Ann. §§ 29.02, 29.03 (West 2003).

Factual and Procedural History

On May 14, 2009, Annadell Quebe was watching television when a man forcibly entered her home and ran upstairs. The intruder was wearing a "ski-mask-like thing" and gloves and carrying a handgun. The intruder returned to the first floor and demanded Quebe's rings. He forcibly removed the rings from her hands and fled the home. Quebe then called the Plainview police.

That same night in the same neighborhood, Vicki Ballard was visiting her sister's home. Ballard was in the garage when a man entered and held a gun to her head. Ballard described the man as wearing a "dark-colored greenish toboggan" over his face, dark clothing, and gloves. The man attempted to pull Ballard toward the house and threatened to shoot her. She struggled with the man and screamed. The intruder struck her in the head with the gun and then fled the garage.

The neighboring Brooks family heard the commotion and Ballard's distress and came to her aid. Officer Mike Hurst responded to their 911 call. Hurst and other PPD officers began to investigate and learned that Robert Brooks had seen a tan Cadillac driving through the neighborhood earlier that evening. Neighborhood residents Cynthia and Leah Olson informed officers that they had also seen a tan Cadillac in the neighborhood on their evening walk. They first saw the Cadillac when it turned its headlights off and parked on a residential road. Before the Olsons got home, they saw the Cadillac again. This time, the Cadillac was about a block away from them. When the car turned around and began heading in their direction, the Olsons rushed home where, a short time later, an unidentified person attempted to gain entry into their home.

Hurst had also noted a tan Cadillac on his way to respond to the emergency call. As he drove to Ballard's neighborhood, he had seen a tan Cadillac in an otherwise empty parking lot and had noted that it seemed out of place. Responding to an urgent call and not yet aware that this vehicle may be connected to the home invasions, Hurst continued without further investigation of the suspicious vehicle in the parking lot.

While these events were occurring in Plainview, PPD Detective Cindy Vera and Officer Dustin Waters were returning to Plainview after dropping off a juvenile at a facility in Lubbock. Vera heard the radio traffic about the robberies and contacted Hurst and her supervisor, Manuel Balderas. Vera and Waters were instructed to watch for a tan Cadillac while en route back to Plainview.

Soon after receiving this instruction, Vera and Waters noticed a tan Cadillac headed south on Interstate 27. The officers turned around to follow the vehicle. Vera called the license plate number of the Cadillac in to dispatch. Appellant was the registered owner of the vehicle. When Vera and Waters caught up to the vehicle, they observed two occupants. As the officers pulled up alongside the car, Vera was able to get a clear view of the driver. Because the officers were approaching Lubbock and losing radio communication with PPD dispatch and because Vera was not wearing proper safety gear to confront likely armed suspects, the officers sought assistance from the Lubbock Police Department. The LPD obliged and set up a perimeter around appellant's listed address.

Upon arriving in Lubbock and while still being followed by Vera and Waters, the Cadillac exited the freeway, re-entered, and then exited again before Vera and Waters lost track of the car in a residential neighborhood. Officer Jacob Flores of the LPD was

3

dispatched to the Beech Street address listed on the car's registration. The Cadillac arrived at the address, and, as Flores approached the residence, the two black males exiting the vehicle saw him and fled on foot. Although he eluded police that evening, appellant was later arrested.

A search of the vehicle on the night of May 14th yielded evidence connecting the vehicle and its occupants to the Plainview robberies. Vera recovered a toboggan/ski mask that matched Ballard's description. She also recovered appellant's wallet, including his state-issued identification card. From the identification card photograph, Vera confirmed that it was appellant whom she had seen driving the vehicle earlier. Further, some jewelry was recovered from inside the car but this jewelry could not be connected to Ballard.

Appellant was charged with aggravated robbery in connection with the attack on Ballard. After hearing evidence, the Hale County jury found appellant guilty of aggravated robbery. Appellant pleaded true to the State's enhancement allegations. After hearing punishment evidence, the jury assessed punishment at life imprisonment. This appeal followed. Appellant brings to this Court three issues: sufficiency of the evidence, exclusion of evidence, and ineffective assistance of counsel.

### Sufficiency of the Evidence

Appellant challenges the sufficiency of the evidence to sustain his conviction.

Standard of Review

In assessing the sufficiency of the evidence, we review all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could

4

have found the essential elements of the offense beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); Brooks v. State, 323 S.W.3d 893, 912 (Tex.Crim.App. 2010).  "[O]nly that evidence which is sufficient in character, weight, and amount to justify a factfinder in concluding that every element of the offense has been proven beyond a reasonable doubt is adequate to support a conviction."  Brooks, 323 S.W.3d at 917 (Cochran, J., concurring).  We remain mindful that "[t]here is no higher burden of proof in any trial, criminal or civil, and there is no higher standard of appellate review than the standard mandated by Jackson."  Id. (Cochran, J., concurring).  When reviewing all of the evidence under the Jackson standard of review, the ultimate question is whether the jury's finding of guilt was a rational finding.  See id. at 906, 907 n.26 (discussing Judge Cochran's dissenting opinion in Watson v. State, 204 S.W.3d 404, 448–50 (Tex.Crim.App. 2006), as outlining the proper application of a single evidentiary standard of review).  "[T]he reviewing court is required to defer to the jury's credibility and weight determinations because the jury is the sole judge of the witnesses' credibility and the weight to be given their testimony." Id. at 899.

Analysis

A person commits the offense of robbery if, in the course of committing theft and with intent to obtain or maintain control of the property, he or she (1) intentionally, knowingly, or recklessly causes bodily injury to another; or (2) intentionally or knowingly threatens or places another in fear of imminent bodily injury or death.  TEX. PENAL CODE ANN. § 29.02. The offense becomes the first-degree felony offense of aggravated robbery when the actor, *inter alia*, uses or exhibits a deadly weapon.  Id. § 29.03(a)(2).

5

Appellant's contention focuses on the identity element of the offense. Specifically, appellant claims that there is insufficient evidence connecting him to the location where Ballard was attacked. However, the jury heard evidence that at least three neighborhood residents saw a tan Cadillac driving around Ballard's neighborhood that evening. Officer Hurst testified that he, too, saw the vehicle in the neighborhood as he responded to the emergency calls but was unaware, at that time, of the vehicle's significance. A vehicle of the same color, make, and model and registered to appellant was located on the highway heading away from Plainview and toward Lubbock in the relevant time frame. Detective Vera identified appellant as the driver. The Cadillac returned to appellant's address.

Ballard identified the toboggan later found in appellant's car as the same type of toboggan worn by the man who attacked her. The search of appellant's vehicle also yielded appellant's wallet containing his identification card, further connecting appellant to the vehicle. Ballard testified that, when she was shown a videotaped interview with appellant, she recognized his voice from that night. Joe Trawicki, custodian of records and former electronic surveillance team member for a national cell phone service provider, explained that detailed information from cell phone towers placed appellant's cell phone in Plainview at times near the time of the Ballard robbery.

From our review of the evidence in the light most favorable to the verdict, we cannot say the jury's finding of guilt beyond a reasonable doubt was an irrational one. Accordingly, we overrule appellant's issue.

## Exclusion of Evidence of Previous Acquittal

Appellant contends that the trial court abused its discretion when it excluded evidence that appellant had been acquitted in a previous trial on charges related to the Quebe robbery.

### Standard of Review

We review a trial court's decision to admit or exclude evidence for abuse of discretion. Shuffield v. State, 189 S.W.3d 782, 793 (Tex.Crim.App. 2006). A trial court does not abuse its discretion if its decision is within the zone of reasonable disagreement. See Walters v. State, 247 S.W.3d 204, 217 (Tex.Crim.App. 2007); Montgomery v. State, 810 S.W.2d 372, 391 (Tex.Crim.App. 1991) (op. on reh'g). We will sustain the trial court's decision if that decision is correct on any theory of law applicable to the case. Romero v. State, 800 S.W.2d 539, 543 (Tex.Crim.App. 1990).

### Analysis

Well after admission of evidence relating to the Quebe robbery, appellant unsuccessfully sought to introduce testimony from a PPD officer relating to appellant's previous acquittal of the Quebe robbery. At trial, appellant sought admission of the acquittal on the basis that such evidence was necessary "to cure the harm of allowing the jury to consider" evidence of the Quebe robbery without knowing that appellant had been acquitted. Looking at the context of his contention at trial, we see that he cast his position in terms of collateral estoppel, arguing that collateral estoppel would apply to bar both re-litigation of the Quebe robbery and, by his argument, admission of evidence

7

connecting appellant to the Quebe robbery.[2]  From this context, we take trial counsel's contention as one advancing the position that admission of evidence of the Quebe robbery was harmful error, and that evidence of acquittal was admissible to cure this harmful error.

On appeal, appellant relies exclusively on Kerbyson v. State, 711 S.W.2d 289 (Tex.App.—Dallas 1986, pet. ref'd), to support his contention.  In Kerbyson, the appellant was convicted of criminal mischief.  Id. at 289.  Over appellant's objection, the trial court admitted evidence of an extraneous offense of theft for which the appellant had been acquitted.  Id. at 290.  Having found that the trial court erred in admitting evidence of the theft, the Dallas court reversed the criminal mischief conviction and remanded for a new trial.  Id.  It would appear from appellant's reliance on Kerbyson that he contends evidence of the acquittal was relevant upon admission of extraneous offense evidence which, though he lodged no objection, was erroneously admitted.

The arguments underlying appellant's theory of admissibility below and his contention on appeal seem to be distinct arguments.  That is, at trial, appellant advanced the argument that the acquittal evidence was necessary to cure the error

---

[2] We note that appellant made no objection, in terms of collateral estoppel or otherwise, to admission of evidence related to the Quebe robbery.  Collateral estoppel is generally employed in this situation as a basis for excluding evidence of an extraneous offense.  That is, generally speaking, evidence of an extraneous offense for which a defendant has been acquitted has generally been held inadmissible under the Double Jeopardy Clause of the United States and Texas constitutions and under the doctrine of collateral estoppel.  See Ashe v. Swenson, 397 U.S. 436, 445–46, 90 S.Ct. 1189, 25 L.Ed. 2d 469 (1970); Dedrick v. State, 623 S.W.2d 332, 336 (Tex.Crim.App. [Panel Op.] 1981).  However, evidence of an extraneous offense for which a defendant has been acquitted may be introduced into evidence against the defendant in a subsequent trial where the prior acquittal did not determine an ultimate issue in the subsequent case.  Dowling v. United States, 493 U.S. 342, 348, 110 S.Ct. 668, 672, 107 L.Ed. 2d 708 (1990); Dunklin v. State, 194 S.W.3d 14, 24 (Tex.App.—Tyler 2006, no pet.).

8

committed when the trial court admitted evidence of the robbery even though admission of such evidence was barred by collateral estoppel. However, on appeal, it would appear that appellant contends the acquittal evidence was relevant to explain or rebut the evidence related to an extraneous offense. Arguably, the acquittal may have been relevant but we are not convinced that the trial court was presented with this contention; appellant sought admission of the evidence as a curative measure to unobjected-to error. Based on our reading of his contentions, appellant's complaint on appeal does not appear to comport with the theory of admissibility he advanced at trial. See TEX. R. APP. P. 33.1; Pena v. State, 285 S.W.3d 459, 464 (Tex.Crim.App. 2009) (concluding that complaint on appeal must comport with the complaint made at trial). That being so, we conclude that appellant has not preserved his appellate complaint for our review. See Martinez v. State, 91 S.W.3d 331, 336 (Tex.Crim.App. 2002) (pointing out that appellate courts may uphold a trial court's ruling on any legal theory or basis applicable to the case, but usually may not reverse a trial court's ruling on any theory or basis that might have been applicable but was not raised). Accordingly, we overrule appellant's issue.

## Effectiveness of Counsel

By his final issue, appellant contends that trial counsel's failures in voir dire and at trial rendered his assistance ineffective. The United States Constitution's guarantee of the right to counsel encompasses the right to effective assistance of counsel. U.S. CONST. amend. VI; Strickland v. Washington, 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Included in the constitutionally guaranteed right to effective assistance of counsel is the right to question prospective jurors in order to intelligently

9

and effectually exercise peremptory challenges and challenges for cause during the jury selection process. See Ex parte McKay, 819 S.W.2d 478, 482 (Tex.Crim.App. 1990).

Applicable Law and Standard of Review

In determining whether counsel's representation was so inadequate as to violate a defendant's Sixth Amendment right to counsel, Texas courts apply the two-pronged test enunciated in Strickland, 466 U.S. at 687. See Hernandez v. State, 726 S.W.2d 53, 55 (Tex.Crim.App. 1986). Judicial review of an ineffective assistance of counsel claim must be highly deferential, and there is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. Strickland, 466 U.S. at 689. An appellant bears the burden of proving by a preponderance of the evidence that (1) counsel's representation fell below an objective standard of reasonableness and (2) the deficient performance prejudiced the appellant. Freeman v. State, 125 S.W.3d 505, 511 (Tex.Crim.App. 2003). Failure to make the required showing of either deficient performance or sufficient prejudice is fatal to an ineffectiveness claim. See id.

In the majority of cases, the record on direct appeal is undeveloped and cannot adequately reflect the motives behind trial counsel's actions.[3] Mallett v. State, 65 S.W.3d 59, 63 (Tex.Crim.App. 2001). The Texas Court of Criminal Appeals has recognized that appellate courts can rarely decide the issue of ineffective assistance of counsel because "the appellate record rarely speaks to the strategic reasons that counsel may have considered." Aldrich, 104 S.W.3d at 896. Only rarely, when "trial counsel's ineffectiveness is so apparent from the record," may an appellant's ineffective

---

[3] The proper vehicle for raising such a claim is almost always an application for writ of habeas corpus. Aldrich v. State, 104 S.W.3d 890, 896 (Tex.Crim.App. 2003).

assistance claim prevail on direct appeal. Freeman, 125 S.W.3d at 507 (quoting Massaro v. United States, 538 U.S. 500, 155 L.Ed. 2d 714, 123 S.Ct. 1690 (2003)). Reviewing courts "commonly assume a strategic motive if any can be imagined" and will conclude that counsel's performance was "deficient only if the conduct was so outrageous that no competent attorney would have engaged in it." Andrews v. State, 159 S.W.3d 98, 101 (Tex.Crim.App. 2005).

Analysis

With respect to appellant's contentions regarding trial counsel's failure to ask follow-up question during voir dire, we conclude that appellant has failed to show that counsel's performance fell below an objective standard of reasonableness. Trial counsel's questions during voir dire may be dictated by trial strategy. Jackson v. State, 491 S.W.2d 155, 156 (Tex.Crim.App. 1973). Trial counsel's failure to ask questions appellate counsel deems important does not mean that trial counsel's performance was deficient. See Goodspeed v. State, 187 S.W.3d 390, 392 (Tex.Crim.App. 2005). In fact, the failure to ask *any* questions during voir dire may be a reasonable trial strategy when trial counsel believed that the State's questions addressed his concerns. See id. The Texas Court of Criminal Appeals reiterated that, when looking at an ineffective assistance claim based on voir dire examination, the failure to ask certain questions–or any questions–must "amount to behavior that is so outrageous, no competent attorney would have engaged in it." Id. at 392. Especially when the complained-of questions involved subject matter that has already been covered, the decision to forego posing questions on the same subject may be characterized as sound trial strategy. See id.;

11

Beck v. State, 976 S.W.2d 265, 267 (Tex.App.—Amarillo 1998, pet. ref'd); Williams v. State, 970 S.W.2d 182, 184 (Tex.App.—Houston [14th Dist.] 1998, pet. ref'd).

Appellant maintains that trial counsel should have asked follow-up questions regarding potential biases or prejudices on punishment issues. The record reveals that the State engaged in a fairly extensive, five-and-a-half-page exchange on general punishment issues including the bifurcated nature of the trial and the distinctions between the issues and evidence covered in each phase of the trial. From the State's thorough discussion of and examination on punishment issues and the panel's answers to the State's questions, trial counsel could have been reasonably satisfied that punishment issues had been adequately explored. Further, our review of trial counsel's questions during voir dire reveals a rather extensive examination on issues other than punishment-related biases or prejudices. That trial counsel chose to focus his examination on other issues, including attitudes toward crime and issues concerning the credibility of eyewitnesses and investigation techniques, is a reasonable trial strategy which we will not second-guess on appeal. See Beck, 976 S.W.2d at 267.

During the State's voir dire examination, it was revealed that several prospective jurors had some knowledge of or some relationship with identified witnesses in the trial. Appellant focuses on the answers of two venire members who later served on the jury. One venireperson explained that Leah Olson was a good friend of the venireperson's daughter but explained that she did not "think it would cause any problems." The State continued to explore the impact of the relationship between venireperson and witness: [W]ould you be able to judge those people's testimony as you would anybody else, judge their credibility as to how they testify here in the trial?" The venireperson

12

answered affirmatively. Another venireperson explained that she knew Cynthia Olson from church but answered "no" when asked whether that relationship would cause her a problem with sitting on the jury. Again, both venire members ultimately sat on the jury.

The record establishes that the State explored the impact of the relationships between the venire members and witnesses. Trial counsel could have reasonably concluded that the State's questions and the venire members' answers on the matter gave fair assurance that the venire members would not be biased by their knowledge of or relationship with the witnesses. See Goodspeed, 187 S.W.3d at 392; Beck, 976 S.W.2d at 267. Trial counsel may have been satisfied with the venire members' unequivocal answers to the State's questions and may have chosen to spend his time and effort during voir dire on other matters he deemed more relevant and yet unexplored. In fact, trial counsel explained in his introductory remarks to the venire that he intended to do just that: "I'm going to also try not to cover over the same topic [the State's attorney] covered; sometimes I will." Again, trial counsel's voir dire examination appears thorough, and we will not review his decisions in hindsight to conclude that he should have revisited issues already covered during voir dire. See Beck, 976 S.W.2d at 267 (refusing to undertake the task of micromanaging trial counsel's actions).

Next, we address the claim that trial counsel's performance was rendered deficient by his failure to object to evidence of the Quebe robbery. As the record suggests, counsel may have anticipated being able to introduce evidence of the acquittal on charges related to the Quebe robbery. Though, ultimately, such strategy was unsuccessful, we cannot say that such an attempt was not a reasonable trial strategy. The record could be read to support the contention that trial counsel's best

13

chance at getting in the acquittal was to permit the incriminating evidence in first. Because we can imagine at least a plausible, albeit ultimately unsuccessful, trial strategy, we cannot conclude that trial counsel's performance fell below an objective standard of reasonableness. See Ex parte Ellis, 233 S.W.3d 324, 331 (Tex.Crim.App. 2007) (observing that defensive course was "risky" but was not so unreasonable that no trial attorney would pursue such a course).

Given that trial counsel's actions could have been reasonably construed as trial strategy, the record does not affirmatively demonstrate ineffectiveness of counsel, and we overrule appellant's final issue.

Conclusion

Having overruled appellant's issues, we affirm the judgment of the trial court.


Mackey K. Hancock
Justice

Do not publish.


Pirtle, J., concurring.