NO. 12-03-00074-CR
 
IN THE COURT OF APPEALS

TWELFTH COURT OF APPEALS DISTRICT

TYLER, TEXAS
REGINALD DEAN,                                            §                APPEAL FROM THE 7TH
APPELLANT
 
V.                                                                          §                JUDICIAL DISTRICT COURT OF

THE STATE OF TEXAS,
APPELLEE                                                         §                SMITH COUNTY, TEXAS
                                                                                                                                                            
MEMORANDUM OPINION
            Reginald Dean (“Appellant”) appeals his conviction for indecency with a child, for which he
was sentenced to imprisonment for eight years. Appellant raises two issues on appeal. We affirm.
 
Background
            Following his arrest in June 1999, Appellant was indicted on September 16, 1999 for
indecency with a child. Appellant’s case was set for trial for January 2000, but was later reset for
February 21, 2000. During this same period, Appellant was on federal parole. In February 2000,
Appellant’s federal parole was revoked, and Appellant was incarcerated in the federal system until
May 20, 2002. Following his release, Appellant was arrested and returned to Smith County to face
the charges in the case at hand.
            On September 11, 2002, Appellant filed a pro se document requesting a speedy trial. 
            Appellant waived arraignment, and his trial date was set for August 5, 2002. On August 2,
2002, Appellant requested and was granted a continuance of his trial setting until October 7, 2002. 
On October 7, 2002, the court noted that Appellant was having trouble locating some trial witnesses,
and that Appellant had filed a motion for continuance on September 30, 2002 with regard to additional
time he required to procure such witnesses. As a result, the court granted Appellant’s motion for
continuance and reset the case for November 4, 2002. 
            On November 4, 2002, the case was called on the criminal trial docket. This time, the
prosecuting attorney filed a motion for continuance, which Appellant did not oppose.


 Appellant’s
counsel related to the court that he had several cases pending in Harris County, and would not be
available for trial until the week of Thanksgiving. The court noted that it had not requested any jury
panels for that week. Appellant’s counsel asked that the case be set in January. Urging that he needed
the jurors’ utmost attention given the potential consequences to Appellant, Appellant’s counsel voiced
his concern that jurors might not be as focused on the case during the holidays. As a result, the trial
court reset the case for January 6, 2003.
            On January 6, 2003, the court called the case, and both the State and Appellant announced
present. The court discussed the possibility of setting the case for trial on January 21, 2003. 
Appellant’s counsel stated that he was already set for trial in Harris County on that day, but that he
was available for trial on February 3, 2003. The court then asked about setting the case for trial on
February 10, 2003. Appellant’s counsel stated that he was available for trial on February 10, 2003. 
The court explained to Appellant the reason for moving the trial date to February 10, and Appellant
responded that he understood. 
            Thereafter, the trial court asked Appellant if there was anything else that he required. 
Appellant responded, “Yes, sir. A speedy trial. Can I have a hearing?” The court responded that
Appellant had filed the appropriate paperwork through his counsel, and that the issue would be heard
before the trial commenced. Appellant responded that he found the court’s answer to be agreeable.
            On February 10, 2003, the court called the case, and both parties announced that they were
ready to proceed. Appellant argued his motion to dismiss based on the denial of his right to a speedy
trial. After conducting a hearing on the matter, the trial court denied Appellant’s motion and
scheduled Appellant’s case for trial the following morning.
            The next morning, before the jury was seated, Appellant and the State informed the court that
the parties had reached a plea agreement. Appellant subsequently pleaded guilty as charged. The trial
court sentenced Appellant to imprisonment for eight years, and this appeal followed.
 
Right to Speedy Trial
            In his first issue, Appellant contends that the trial court improperly denied him his right to a
speedy trial. The essential ingredient of the Sixth Amendment's speedy trial guarantee is "orderly
expedition and not mere speed." United States v. Marion, 404 U.S. 307, 313, 92 S. Ct. 455, 459, 30
L. Ed. 2d 468 (1971) (Sixth Amendment speedy trial guarantee would appear to guarantee a criminal
defendant that the Government will move with the dispatch that is appropriate to assure him an early
and proper disposition of the charges against him). Since 1972, United States Supreme Court
precedent has required courts to analyze federal constitutional speedy trial claims "on an ad hoc basis"
by weighing and then balancing four factors: (1) length of the delay, (2) reason for the delay, (3)
assertion of the right, and (4) prejudice to the accused. Barker v. Wingo, 407 U.S. 514, 530, 92 S. Ct.
2182, 2192, 33 L. Ed. 2d 101 (1972). This balancing test requires weighing case by case "the conduct
of both the prosecution and the defendant." Id., 407 U.S. at 530, 92 S. Ct. at 2192. No single factor
is a "necessary or sufficient condition to the finding" of a speedy trial violation. Id., 407 U.S. at 533,
92 S. Ct. at 2193. The related factors "must be considered together with such other circumstances as
may be relevant." Id.
            In reviewing the trial court's decision on Appellant’s speedy trial claim, we apply a bifurcated
standard of review. See State v. Munoz, 991 S.W.2d 818, 821 (Tex. Crim. App. 1999). We review
factual issues for an abuse of discretion standard and review legal issues de novo. Id.  
            The State concedes that the delay from the time of the formal charge against Appellant until
he asserted his right to a speedy trial meets the first factor and triggers analysis under the remaining
Barker factors.


 See, e.g., Munoz, 991 S.W.2d at 822 (delay of seventeen months between time of
the appellant’s arrest and the date of speedy trial hearing). We conclude the delay in the instant case
is sufficient to trigger consideration of the other Barker factors. Munoz, 991 S.W.2d at 822.
Reason for the Delay
            Under Barker, "different weights should be assigned to different reasons" for the delay.
Barker, 407 U.S. at 531, 92 S. Ct. at 2192. A "deliberate attempt to delay the trial" should be
weighed heavily against the government. Id. A "more neutral reason such as negligence or
overcrowded courts should be weighed [against the government] less heavily." Id. A valid reason
for the delay should not be weighed against the government at all. Id. (valid reason for the delay
"should serve to justify appropriate delay"). And delay that is attributable in whole or in part to the
defendant may even constitute a waiver of a speedy trial claim. Id., 407 U.S. at 528-30, 92 S. Ct. at
2191-92 (delay attributable to defendant constitutes waiver of speedy trial); see also Dickey v.
Florida, 398 U.S. 30, 48, 90 S. Ct. 1564, 1574, 26 L. Ed. 2d 26 (1970) (Brennan, J., concurring)
(defendant may be "disentitled to the speedy-trial safeguard in the case of a delay for which he has,
or shares, responsibility").       
            The record in the case at hand reflects that, following the revocation of his federal probation,
Appellant was remanded to federal custody in February 2000. Appellant was incarcerated in the
federal system until May 20, 2002, at which time he was returned to Smith County for trial on the
charges at hand. Even though there is no evidence that the State sought to secure Appellant’s
presence in the trial court’s jurisdiction, the record further does not indicate that the State’s failure to
secure Appellant’s presence was a deliberate attempt to delay the trial. The burden of excusing the
delay rests with the State, and in light of a silent record or one containing reasons insufficient to
excuse the delay, we must presume that no valid reason for the delay existed. See Turner v. State,
545 S.W.2d 133, 137-38 (Tex. Crim. App. 1976). As such, the State’s failure to secure Appellant’s
presence at trial while Appellant was incarcerated will weigh against the State. But absent evidence
of intent, we will not weigh the factor so heavily as we would were there evidence of intentional
conduct on the State’s part. See Barker, 407 U.S. at 531, 92 S. Ct. at 2192.
            Upon Appellant’s release from federal custody, the record reflects that Appellant’s trial was
set for August 5, 2002. But before Appellant’s trial date, Appellant sought, and was granted, a
continuance. On September 30, 2002, Appellant filed another motion for continuance, which the trial
court granted. The record reflects that the State sought a continuance in November 2002 so that the
prosecuting attorney could talk to the victim and search for a videotape. Appellant did not oppose the
State’s motion for continuance. Furthermore, the record indicates that the trial was further delayed
due to scheduling conflicts on the part of Appellant’s counsel and the court. We conclude that this
factor, while weighing somewhat against the State, weighs more heavily against Appellant, who
contributed, in part, to the delay of which he now complains.



Assertion of Federal Constitutional Right to Speedy Trial
            Under Barker, a defendant still is responsible for asserting or demanding his right to a speedy
trial. See Barker, 407 U.S. at 528-29, 92 S. Ct. at 2191. Although a defendant's failure to assert his
speedy trial right does not amount to a waiver of that right, “failure to assert the right . . . make[s]
it difficult for a defendant to prove he was denied a speedy trial.” Dragoo v. State, 96 S.W.3d 308,
314 (Tex. Crim. App. 2003). This is so because a defendant's lack of a timely demand for a speedy
trial indicates strongly that he did not really want a speedy trial, and that he was not prejudiced by lack
of one. Id. Furthermore, the longer the delay becomes, the more likely a defendant who wished a
speedy trial would be to take some action to obtain it. Id. Thus, inaction weighs more heavily against
a violation the longer the delay becomes. Id. 
            Here, Appellant failed to assert his speedy trial right for nearly three years, and even then,
made the assertion after he had already sought and received one continuance of his trial setting. After
filing his motion for speedy trial, Appellant again sought and received a second continuance. In view
of Appellant’s lengthy delay in filing a motion for speedy trial, which was sandwiched in between
two motions for continuance, we conclude that such a factor weighs very heavily against finding a
violation of Appellant’s speedy trial right. See, e.g., id. at 315.
Prejudice
            The last Barker factor is "prejudice to the defendant." Barker, 407 U.S. at 532-33, 92 S. Ct.
at 2193-94. Such prejudice is assessed "in the light of the interests" that "the speedy trial right [is]
designed to protect." Id. These interests are (1) preventing oppressive pretrial incarceration, (2)
minimizing anxiety and concern of the accused, and (3) limiting the possibility that the defense will
be impaired. Id. Of these subfactors of the last Barker factor, "the most serious is the last, because
the inability of a defendant adequately to prepare his case skews the fairness of the entire system." 
Id. Even so, the factors are interrelated and must be considered together with such other
circumstances as may be relevant. See Munoz, 991 S.W.2d at 828. The court must still engage in a
difficult and sensitive balancing process. Id.
            A defendant has the burden to make some showing of prejudice although a showing of actual
prejudice is not required. Id. at 826. When a defendant makes a prima facie showing of prejudice,
the State carries the obligation of proving that the accused suffered no serious prejudice beyond that
which ensued from the ordinary and inevitable delay. Id. at 826. Excessive delay presumptively
compromises the reliability of a trial in ways that neither party can prove. See Doggett v. U.S., 505
U.S. 647, 655, 112 S. Ct. 2686, 2693, 120 L. Ed. 2d 520 (1992). Yet such presumptive prejudice
cannot alone carry a Sixth Amendment claim without regard to the other Barker criteria. Id., 505
U.S. at 656, 112 S. Ct. at 2693. But when the State’s negligence causes extraordinary delay, and when
the presumption of prejudice, whether specified or presumed, is neither extenuated, as by the
defendant’s acquiescence, nor persuasively rebutted by the State, the defendant is entitled to relief. 
Id., 505 U.S. at 658, 112 S. Ct. at 2694.
            In the case at hand, at the hearing on Appellant’s speedy trial claim, Appellant’s counsel
argued that Appellant’s case had been “severely prejudiced” by the length of time before trial, but
offered no specific evidence of prejudice in support of such a claim. Our review of the record as a
whole does not reveal any specific evidence supporting that Appellant was prejudiced as a result of
the delay. As the Supreme Court noted in Doggett, a delay of five years, such as was the case in
Barker, could be considered extraordinary for purposes of presuming prejudice. See Doggett, 505
U.S. at 658, 92 S. Ct. at 2694. But even if we conclude that prejudice was presumed, the result in this
case will not mirror the result in Doggett. Here, Appellant extenuated any prejudice presumably
caused by the delay of his trial setting in two ways: (1) by seeking two continuances himself; and (2)
by quietly acquiescing to the delay both during his time of incarceration and afterwards when he did
not object either when the State sought to continue the trial of the case, or when the trial court further
delayed the trial based on scheduling concerns. As such, we conclude that any presumed prejudice
weighing in Appellant’s favor is negated by Appellant’s extenuation of such prejudice. Id. Thus, the
fourth factor weighs against Appellant.
Balancing the Barker Factors
            Comparing the facts in the case at hand to the facts in Barker, it is reasonable to conclude that
the State did not violate Appellant’s right to a speedy trial. See Barker, 407 U.S. at 533-37, 92 S. Ct.
at 2193-95 (no speedy trial violation where delay exceeded five years with more than four years of
the delay unexcused, defendant did not assert right to speedy trial, and prejudice was minimal);
Munoz, 991 S.W.2d at 829. Here, although Appellant eventually asserted his right to a speedy trial,
the fact that he waited nearly three years to do so weighs heavily against him for purposes of our
analysis. Moreover, the delay in this case, when compared to Barker, was not excessive. Although
the reason for the delay while Appellant was incarcerated is weighed against the State, absent
evidence of intentional conduct on the State’s part, we do not attribute significant weight concerning
the State’s failure to secure Appellant’s presence in the trial court’s jurisdiction while Appellant was
incarcerated. Thus, the weight attributable to the State’s hand in the delay is less than the weight
attributable to the two continuances sought by Appellant in 2002. After Appellant was released from
federal custody, the State sought one continuance based on a valid reason. Such delay is not weighed
against the State. Furthermore, any presumed prejudice weighing in Appellant’s favor is negated by
Appellant’s extenuation of such prejudice by his acquiescence. We conclude that the Barker factors,
when weighed in light of the facts of the case at hand, weigh more heavily against Appellant’s
position. Thus, we hold that the State did not violate Appellant’s right to a speedy trial. Appellant’s
first issue is overruled.
 
Ineffective Assistance of Counsel
            In his second issue, Appellant contends that his trial counsel was ineffective in that he failed
to pursue Appellant’s speedy trial claim. Claims of ineffective assistance of counsel are evaluated
under the two-step analysis articulated in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052,
80 L. Ed. 674 (1984). The first step requires the appellant to demonstrate that trial counsel's
representation fell below an objective standard of reasonableness under prevailing professional norms. 
See Strickland, 466 U.S. at 688, 104 S. Ct. at 2065. To satisfy this step, the appellant must identify
the acts or omissions of counsel alleged to be ineffective assistance and affirmatively prove that they
fell below the professional norm of reasonableness. See McFarland v. State, 928 S.W.2d 482, 500
(Tex. Crim. App. 1996). The reviewing court will not find ineffectiveness by isolating any portion of
trial counsel’s representation, but will judge the claim based on the totality of the representation. See
Strickland, 466 U.S. at 695, 104 S. Ct. at 2069.
            In any case considering the issue of ineffective assistance of counsel, we begin with the strong
presumption that counsel was effective. See Jackson v. State, 877 S.W.2d 768, 771 (Tex. Crim. App.
1994). We must presume counsel’s actions and decisions were reasonably professional and were
motivated by sound trial strategy. See id. Appellant has the burden of rebutting this presumption by
presenting evidence illustrating why his trial counsel did what he did. See id. Appellant cannot meet
this burden if the record does not affirmatively support the claim. See Jackson v. State, 973 S.W.2d
954, 955 (Tex. Crim. App. 1998) (inadequate record on direct appeal to evaluate whether trial counsel
provided ineffective assistance); Phetvongkham v. State, 841 S.W.2d 928, 932 (Tex. App.–Corpus
Christi 1992, pet. ref'd, untimely filed) (inadequate record to evaluate ineffective assistance claim);
see also Beck v. State, 976 S.W.2d 265, 266 (Tex. App.–Amarillo 1998, pet. ref'd) (inadequate record
for ineffective assistance claim, citing numerous other cases with inadequate records to support
ineffective assistance claim). A record that specifically focuses on the conduct of trial counsel is
necessary for a proper evaluation of an ineffectiveness claim. See Kemp v. State, 892 S.W.2d 112,
115 (Tex. App.–Houston [1st Dist.] 1994, pet. ref'd).
            After proving error, the appellant must affirmatively prove prejudice. See Hernandez v. State,
988 S.W.2d 770, 772 (Tex. Crim. App. 1999); Burruss v. State, 20 S.W.3d 179, 186 (Tex.
App.–Texarkana 2000, pet. ref’d). To establish prejudice, an appellant must prove that but for
counsel's deficient performance, the result of the proceeding would have been different. See
Strickland, 466 U.S. at 694, 104 S. Ct. at 2068. The appellant must prove that his attorney's errors,
judged by the totality of the representation and not by isolated instances of error, denied him a fair
trial. See Burruss, 20 S.W.3d at 186. It is not enough for the appellant to show that the errors had
some conceivable effect on the outcome of the proceedings. Id. He must show that there is a
reasonable probability that, but for his attorney’s errors, the jury would have had a reasonable doubt
about his guilt. Id. 
            Considering the first element of Strickland, our review of the record indicates no evidence
concerning the specific reasons Appellant’s trial counsel chose the course he did. Thus, as to the
alleged deficiencies in his trial counsel’s performance, we hold that Appellant has not met the first
prong of Strickland because the record does not contain evidence necessary to overcome the
presumption that his counsel’s actions and decisions were reasonably professional and were motivated
by sound trial strategy. Therefore, we cannot conclude that Appellant's trial counsel was ineffective. 
            Nonetheless, Appellant argues at length that many of his trial counsel’s actions, or lack
thereof, fell below the professional norm. However, even assuming arguendo that Appellant satisfied
the first prong of the Strickland test, Appellant must still affirmatively prove prejudice. See Burruss,
20 S.W.3d at 186. It is not enough for Appellant to merely show that the errors had some conceivable
effect on the outcome of the proceedings. Id. 
            Despite repeated readings of Appellant’s brief, we can uncover no argument addressing the
second prong of the Strickland test. Rather, Appellant queries generally, 
 
Was Appellant prejudiced by his counsel’s allegedly deficient performance, especially with regard to Dixon’s
apparent failure to pursue his speedy trial claim? From June of 99 to July of 2002 of the existing record will shed
no light on possible reasons for delay between Appellant[’s] arrest and guilty plea. If Appellant’s attorney
fail[ed] to Brief motion with argument and authorities or to offer any evidence at all at speedy trial hearing has
he provided effective assistance of counsel?


            We iterate that the burden of proof as to this issue rests squarely upon Appellant. See Burruss,
20 S.W.3d at 186. As such, we will neither surmise nor devise our own conclusions absent some
cogent argument on Appellant’s behalf that but for his counsel’s alleged unprofessional errors, there
exists a reasonable probability that the result of the proceedings would have been different. 
Appellant’s second issue is overruled. 
 
Conclusion
Having overruled Appellant’s issues one and two, we affirm the trial court’s judgment.
                                                                                                    SAM GRIFFITH 
                                                                                                               Justice
Opinion delivered June 30, 2004.
Panel consisted of Worthen, C.J., Griffith, J., and DeVasto, J.

(DO NOT PUBLISH)