NO. 12-03-00435-CR
NO. 12-03-00436-CR
NO. 12-03-00437-CR
NO. 12-03-00438-CR
NO. 12-03-00439-CR
NO. 12-03-00440-CR
NO. 12-03-00441-CR
 
IN THE COURT OF APPEALS

TWELFTH COURT OF APPEALS DISTRICT

TYLER, TEXAS


JAMES MICHAEL MATTHEWS,                   §     APPEAL FROM THE 8TH
APPELLANT

V.                                                                         §     JUDICIAL DISTRICT COURT OF

THE STATE OF TEXAS,
APPELLEE                                                        §     HOPKINS COUNTY, TEXAS





OPINION
            James Michael Matthews appeals his convictions for one count of aggravated sexual assault
of a child


 and ten counts of indecency with a child.


 Appellant raises four issues on appeal. We
affirm.

Background
            Appellant was charged by multiple indictments with eleven


 counts of indecency with a child
and one count of aggravated sexual assault of a child. The indecency charges stemmed from
allegations from Appellant’s daughter, J.M., and his two nieces, E.W. and L.A.


 The charge of
aggravated sexual assault related to an incident alleged by E.W. Each of the complainants testified
at trial.
L.A.’s Testimony
            L.A. testified concerning four incidents involving Appellant that began occurring sometime
before her eighth birthday. L.A. testified that, on one occasion, she was at Appellant’s house late
one afternoon, and that she, Appellant, and her cousin, S.W., who is Appellant’s son, were lying on
her aunt’s bed.


 L.A. testified that she was lying between Appellant and S.W. According to L.A.,
while her cousin was asleep, Appellant touched and rubbed L.A.’s vagina underneath her clothes
with his hand. L.A. testified that Appellant then made her touch and rub his penis with her hand.
            On another occasion, when L.A. was visiting her grandparents’ house, she, Appellant, and
S.W. were walking in a nearby pasture next to a wooded area. L.A. testified that S.W. went off to
play, and while he was away, Appellant sat on a fallen tree with L.A. on his lap. L.A. stated that as
she sat on Appellant’s lap, Appellant touched her vagina on top of her clothing and made her touch
his penis on top of his clothing.
            L.A. testified that in another instance, she and S.W. were sitting in the living room at her
grandparents’ house when Appellant entered the room. L.A. stated that she was lying on the sofa
and that Appellant entered the room and sat next to her. L.A. testified that, as Appellant sat there,
he touched her vagina with his hand on top of her clothes.
            L.A. next testified that on yet another occasion, she was alone with Appellant in his house. 
According to L.A., Appellant laid on the floor and made her get on top of him and kiss him on the
lips. 
E.W.’s Testimony
            E.W. testified concerning four incidents involving Appellant that occurred when she was
approximately nine or ten years old. E.W. testified that, on one occasion, while she was visiting her
grandparents’ house, she was in an uncle’s bedroom alone with Appellant. According to E.W.,
Appellant pulled her shorts and underwear down to her ankles. She then walked into a nearby room. 
E.W. testified that Appellant followed her, picked her up, and put his mouth on her vagina.
            E.W. further testified concerning another incident when she and Appellant were in the
bathroom at Appellant’s house. E.W. stated that Appellant pulled down his pants, took her hands,
placed them on his erect penis, and made E.W. masturbate him.
            E.W. testified that, on another occasion, when she was spending the night at Appellant’s
house and was sleeping in the bed with Appellant and his wife, she awoke to discover Appellant’s
fingers inside her vagina.
            Finally, E.W. testified that on yet another occasion, she and Appellant were in the woods near
her grandparents’ house picking blackberries. E.W. stated that Appellant either removed or
unbuttoned his shirt and, with E.W. on top of him, touched her breast.
J.M.’s Testimony
            J.M. testified concerning an incident involving Appellant that occurred when she was eleven
years old. According to J.M., on August 14, 2001, she was at home and had fallen asleep on the bed
that she and her mother ordinarily shared. J.M. awoke when Appellant entered the room and sat on
the bed beside her. J.M. stated, “He started touching me, but he was being more aggressive than he
usually was.” She then testified that Appellant laid down on the bed and touched her vagina and
breast with his hand on top of her clothes. J.M. stated that Appellant touched her vagina for a few
minutes and kissed her on her mouth and the top of her chest. J.M. further testified that Appellant
touched her chest under her clothes, but on top of her undergarments.
            J.M. recounted that prior to the aforementioned incident, she had attempted to commit suicide
by swallowing a bottle of pills. At the time, her given reason for her suicide attempt was that she
was depressed and her mother was not paying much attention to her. J.M. testified that she now
realizes that she took the pills because she did not want to be alone with her father on an upcoming
vacation because he would “touch” her sometimes. J.M. stated that she never said anything about
it because it was easier to make up another excuse for her behavior. Following the incident on
August 14, J.M. became depressed and anorexic. J.M. testified that she stopped eating because she
thought Appellant molested her because there was something wrong with her body.
Testimony of Appellant’s Wife and Kathy Smedley



            Appellant’s wife testified that while at work, she received a phone call from her daughter,
J.M., in August 2001. Appellant’s wife testified that J.M. was crying and told her that “she had
come to lay down to take a nap on [her] bed and had the TV on, and [Appellant] had come over ...
[and] touched her private parts and her breasts.”
            Kathy Smedley, the program director for the Northeast Texas Child Advocacy Center,
interviewed J.M. after the matter was referred to the Advocacy Center by Child Protective Services.


 
Smedley testified that J.M. told her that Appellant touched her vagina. A videotape of the interview
between Smedley and J.M. was introduced into evidence over Appellant’s objection.
Verdict and Sentence
            Following the close of evidence and argument of counsel, the jury found Appellant guilty as
charged on ten counts of indecency with a child and one count of aggravated sexual assault of a
child. The jury further recommended punishment at imprisonment for ten years and a $2,000 fine
for each count of indecency with a child and imprisonment for forty years and a $5,000 fine for the
count of aggravated sexual assault of a child. The trial court sentenced Appellant accordingly. This
appeal followed.

Outcry Witnesses
            In his first issue, Appellant argues that the trial court erred in admitting the outcry testimony
of both Appellant’s wife and Kathy Smedley.


 A trial court has broad discretion in determining the
admissibility of outcry witness testimony. See Garcia v. State, 792 S.W.2d 88, 92 (Tex. Crim. App.
1990). The exercise of such discretion will not be disturbed unless a clear abuse of discretion is
established by the record. Id. A trial court’s findings will be upheld when they are supported by the
evidence. Id.
Multiple Outcry Witnesses
            Outcry testimony is admissible in spite of the hearsay rule with respect to statements that
describe the alleged offense where such statements (1) were made by the child against whom the
offense was allegedly committed and (2) were made to the first person, 18 years of age or older,
other than the defendant, to whom the child made a statement about the offense. See Tex. Code
Crim. Proc. Ann. art. 38.072 § 2(a), (b) (Vernon Supp. 2004–05). To “describe the alleged
offense,” the statute demands that the statement must be “more than words which give a general
allusion that something in the area of child abuse was going on[,]” but rather, must describe the
offense “in some discernible manner[.]” Garcia, 792 S.W.2d at 91. 
            Admissible outcry witness testimony is not person-specific, but event-specific. See
Broderick v. State, 35 S.W.3d 67, 73 (Tex. App.–Texarkana 2000, pet. ref’d). However, before
more than one outcry witness may testify, it must be determined that the outcry concerned different
events, and not simply a repetition of the same event as related by the victim to different individuals. 
Id.
            In the case at hand, the charges at issue relating to J.M. allege (1) that Appellant intentionally
or knowingly engaged in sexual contact with J.M. by touching her genitals and (2) that Appellant
intentionally or knowingly engaged in sexual contact with J.M. by touching her breast. Appellant’s
wife testified that J.M. told her that Appellant had molested her by touching her “private parts” and
her “breasts.” Smedley subsequently testified that J.M. told her that Appellant touched her vagina. 
While the record reflects that Appellant’s wife was the first person over eighteen to whom J.M.
related the incident of Appellant touching her breasts, J.M.’s statement that Appellant touched her
“private parts” does not describe any alleged offense in a discernable manner as required by the
statute. The statement that Appellant touched J.M.’s “private parts” is no more than a general
allusion that child abuse had occurred. Thus, Appellant’s wife did not offer outcry testimony with
respect to the allegations that Appellant touched J.M.’s genitals. As Smedley testified that J.M. told
her that Appellant touched her vagina, she is the proper outcry witness for that incident. We hold
that the trial court did not err in admitting the testimony of two outcry witnesses as their testimony
related to different incidents.
Videotaped Interview Containing Outcry Testimony
            As part of his first issue, Appellant further argues that if Smedley’s testimony was properly
admitted, then the trial court erred in admitting the videotaped interview between Smedley and J.M.
because the tape contained cumulative evidence. As with all rulings on the admissibility of
evidence, we must evaluate the trial court's ruling under an abuse of discretion standard of review.
See Green v. State, 934 S.W.2d 92, 101-02 (Tex. Crim. App.1996). An abuse of discretion occurs
where a trial judge acts arbitrarily and unreasonably, without reference to guiding rules or principles
of law. See Briones v. State, 12 S.W.3d 126, 128 (Tex. App.–Fort Worth 1999, no pet.). Thus, the
trial court is given wide discretion in determining the admissibility of evidence. Id.
            Texas courts have long recognized cumulativeness as a factor allowing the exclusion of
probative evidence. Id. “Cumulative” implies that other relevant evidence has already been
received. Id. A careful examination of Rule 403's wording suggests that where cumulative evidence
is offered, exclusion is not mandatory, but only an alternative to be considered in promoting judicial
efficiency. Id. (citing Alvarado v. State, 912 S.W.2d 199, 212 (Tex. Crim. App.1995)). Therefore,
the significance of Appellant's objection depends on whether the videotape's probative value
substantially outweighed its effect on the trial's efficiency. Briones, 12 S.W.3d at 126.
            Appellant cites Williams v. State, No. 06-02-00090-CR, 2003 WL 22100789 (Tex.
App.–Texarkana 2003, pet. ref’d) (not designated for publication) in support of his argument. 
However, Appellant’s reliance on Williams is curious. In Williams, although the trial court
concluded that the admission of a videotaped interview of an outcry witness was improper, it held
that the admission of such testimony did not harm the appellant because such evidence was
“cumulative of properly admitted testimony on the same issue.” Id. at *3. Thus, even if we were
to assume that the videotaped interview between Smedley and J.M. was admitted in error, such error
did not harm Appellant because, as is the brunt of Appellant’s argument, it was cumulative of other
testimony on the same issue. Id. 
            Furthermore, even if, as Appellant contends, the videotaped interview was unnecessarily
cumulative, the record does not reflect that Appellant was harmed as a result thereof. Error is
harmless when evidence of the same acts is admitted later at trial without objection. See Woolls v.
State, 665 S.W.2d 455, 470 (Tex. Crim. App. 1983). In the instant case, following Smedley’s
testimony and the introduction of the videotaped interview between Smedley and J.M., J.M. testified
without objection that Appellant touched her vagina and her breast with his hand on top of her
clothes. Such testimony corresponds closely with the testimony of Smedley and the videotaped
interview between Smedley and J.M.. Thus, we hold that even if the trial court abused its discretion
in admitting the videotaped interview between Smedley and J.M., such error was harmless. 
Appellant’s first issue is overruled.

Refusal to Sever
            In his second issue, Appellant argues that he was unfairly prejudiced by the trial court’s
refusal to sever the prosecution of the various charges against him. Specifically, Appellant argues
that had the severance been granted, the jury in such separate trials would not have heard the
testimony of multiple victims. 
            A defendant’s right to sever two or more offenses that have been consolidated or joined for
trial does not apply to a prosecution for indecency with a child or aggravated sexual assault of a
victim under seventeen years of age unless the court determines that the defendant or the state would
be unfairly prejudiced by a joinder of offenses. See Tex. Pen. Code Ann. § 3.04(c) (Vernon 2003). 
The standard of review for whether a trial court properly ruled on a motion to sever, when that
determination is left to the trial court by statute, is abuse of discretion. See Salazar v. State, 127
S.W.3d 355, 365 (Tex. App.–Houston [14th Dist.] pet. ref’d). There is no presumption that the
joinder of cases involving aggravated sexual assault against different children is unfairly prejudicial. 
Id. 
            Evidence of other crimes is not admissible to prove the character of a person to show he acted
in conformity therewith, but such evidence may be admissible for other purposes. See Tex. R. Evid.
404(b). To be admissible, evidence must be relevant to some material issue in the case and not
simply proof of character conformity. Salazar, 127 S.W.3d at 365 (citing Moses v. State, 105
S.W.3d 622, 626 (Tex. Crim. App. 2003)). The ultimate test is whether the probative value of the
evidence substantially outweighs its prejudicial effect. Id. 
            Here, the underlying defensive theory in Appellant’s case was that the allegations against him
were concocted to extort the proceeds of an insurance check from him, or otherwise, as a result of
lack of parental attention, anger, resentment, or general exposure to familial dysfunction. Evidence
of other crimes may be admitted if it rebuts a defensive theory. See Salazar, 127 S.W.3d at 365
(citing Moses, 105 S.W.3d at 627)). Thus, even had Appellant’s cases been tried separately, it is
probable that the testimony of the other victims would have been admissible to refute the defensive
theory that the complainants, for whatever reason, concocted the story. See Salazar, 127 S.W.3d at
365; Castoreno v. State, 932 S.W.2d 597, 600 (Tex. App.–San Antonio 1996, pet. ref’d) (stating
evidence of extraneous acts was admissible to rebut defensive theory that the defendant was being
framed). We conclude that the trial court could have reasonably found that joinder of the cases was
not unfairly prejudicial against Appellant. Therefore, we hold that the trial court did not abuse its
discretion in trying the cases together. See Salazar, 127 S.W.3d at 366. Appellant’s second issue
is overruled.

Ineffective Assistance of Counsel
            In his third issue, Appellant contends that he received ineffective assistance of counsel. 
Specifically, Appellant argues that his trial counsel was ineffective in that he failed to submit the
motion to sever to the trial court in a timely fashion. Appellant’s third issue is conditioned on the
assumption that our resolution of his second issue turned on the timeliness of his motion to sever. 
However, as set forth above, we have concluded that the trial court could have reasonably found that
joinder of the cases was not unfairly prejudicial against Appellant and, therefore, did not abuse its
discretion in trying the cases together. Yet, even if Appellant’s third issue was not conditioned on
an alternate underlying rationale for the resolution of his second issue, the outcome would not differ.
            Claims of ineffective assistance of counsel are evaluated under the two-step analysis
articulated in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 674 (1984). The
first step requires the appellant to demonstrate that trial counsel's representation fell below an
objective standard of reasonableness under prevailing professional norms. See id., 466 U.S. at 688,
104 S. Ct. at 2065. To satisfy this step, the appellant must identify the acts or omissions of counsel
alleged to be ineffective assistance and affirmatively prove that they fell below the professional norm
of reasonableness. See McFarland v. State, 928 S.W.2d 482, 500 (Tex. Crim. App. 1996). The
reviewing court will not find ineffectiveness by isolating any portion of trial counsel’s
representation, but will judge the claim based on the totality of the representation. See Strickland,
466 U.S. at 695, 104 S. Ct. at 2069.
            To satisfy the Strickland standard, the appellant is also required to show prejudice from the
deficient performance of his attorney. See Hernandez v. State, 988 S.W.2d 770, 772 (Tex. Crim.
App. 1999). To establish prejudice, an appellant must prove that but for counsel's deficient
performance, the result of the proceeding would have been different. See Strickland, 466 U.S. at
694, 104 S. Ct. at 2068.
            In any case considering the issue of ineffective assistance of counsel, we begin with the
strong presumption that counsel was effective. See Jackson v. State, 877 S.W.2d 768, 771 (Tex.
Crim. App. 1994). We must presume counsel’s actions and decisions were reasonably professional
and were motivated by sound trial strategy. See id. Appellant has the burden of rebutting this
presumption by presenting evidence illustrating why his trial counsel did what he did. See id. 
Appellant cannot meet this burden if the record does not affirmatively support the claim. See
Jackson v. State, 973 S.W.2d 954, 955 (Tex. Crim. App. 1998) (inadequate record on direct appeal
to evaluate whether trial counsel provided ineffective assistance); Phetvongkham v. State, 841
S.W.2d 928, 932 (Tex. App.–Corpus Christi 1992, pet. ref'd, untimely filed) (inadequate record to
evaluate ineffective assistance claim); see also Beck v. State, 976 S.W.2d 265, 266 (Tex.
App.–Amarillo 1998, pet. ref'd) (inadequate record for ineffective assistance claim, citing numerous
other cases with inadequate records to support ineffective assistance claim). A record that
specifically focuses on the conduct of trial counsel is necessary for a proper evaluation of an
ineffectiveness claim. See Kemp v. State, 892 S.W.2d 112, 115 (Tex. App.–Houston [1st Dist.]
1994, pet. ref'd).
            In the case at hand, the record is silent as to the reasons underlying Appellant’s counsel’s
timing with regard to his motion to sever. As a result, Appellant cannot overcome the strong
presumption that his counsel performed effectively. Therefore, we hold that Appellant has not met
the first prong of Strickland because the record does not contain evidence concerning Appellant’s
trial counsel’s reasons for choosing the course he did. Thus, we cannot conclude that Appellant's
trial counsel was ineffective. Appellant’s third issue is overruled.

Factual Sufficiency
            In his fourth issue, Appellant argues that the evidence admitted during trial is insufficient to
support a conviction for indecency with a child and aggravated sexual assault of a child. More
specifically, Appellant argues that while the victims testified that he committed the crimes with
which he was charged, other evidence points to possible ulterior motives, which cast doubt on the
veracity of the victims’ testimony. We interpret Appellant’s fourth issue as urging that the evidence
is factually insufficient to support the jury’s verdict.
            In conducting a factual sufficiency review, we must first assume that the evidence is legally
sufficient under the Jackson standard. See Clewis v. State, 922 S.W.2d 126, 134 (Tex. Crim. App.
1996). We then consider all of the evidence weighed by the jury that tends to prove the existence
of the elemental fact in dispute and compare it to the evidence that tends to disprove that fact. See
Santellan v. State, 939 S.W.2d 155, 164 (Tex. Crim. App. 1997). Although we are authorized to
disagree with the jury’s determination, even if probative evidence exists that supports the verdict, 
see Clewis, 922 S.W.2d at 133, our evaluation should not substantially intrude upon the jury’s role
as the sole judge of the weight and credibility of witness testimony. Santellan, 939 S.W.2d at 164. 
Where there is conflicting evidence, the jury’s verdict on such matters is generally regarded as
conclusive. See Van Zandt v. State, 932 S.W.2d 88, 96 (Tex. App.– El Paso 1996, pet. ref’d). 
Ultimately, we must ask whether a neutral review of all the evidence, both for and against the
finding, demonstrates that the proof of guilt is so obviously weak as to undermine our confidence
in the jury's determination, or the proof of guilt, although adequate if taken alone, is greatly
outweighed by contrary proof. Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000).


 
            A verdict will be set aside “only if the evidence supporting guilt is so obviously weak, or the
contrary evidence so overwhelmingly outweighs the supporting evidence, as to render the conviction
clearly wrong and manifestly unjust.” Ortiz v. State, 93 S.W.3d 79, 87 (Tex. Crim. App. 2002); see 
Sims v. State, 99 S.W.3d 600, 601 (Tex. Crim. App. 2003). A clearly wrong and manifestly unjust
verdict occurs where the jury's finding “shocks the conscience,” or “clearly demonstrates bias.” 
Zuniga, 144 S.W.3d at 481.
            As the court of criminal appeals explained in Zuniga, "There is only one question to be
answered in a factual-sufficiency review: Considering all of the evidence in a neutral light, was a
jury rationally justified in its finding of guilt beyond a reasonable doubt?” See id. at 484.             In the case at hand, the testimony of the three victims was compelling. Yet, Appellant urges
in his brief that evidence that the victims each had issues such as anger, resentment, lack of parental
attention, and general familial dysfunction casts reasonable doubt on the veracity of the respective
victims’ testimony. 
            We iterate that our evaluation should not substantially intrude upon the jury’s role as the sole
judge of the weight and credibility of witness testimony, see Santellan, 939 S.W.2d at 164, and that
where there is conflicting evidence, the jury’s verdict on such matters is generally regarded as
conclusive. See Van Zandt v. State, 932 S.W.2d 88, 96 (Tex. App.– El Paso 1996, pet. ref’d). Our
review of the record as a whole, considered in a neutral light, does not cause us to conclude that the
evidence supporting a finding of Appellant’s guilt beyond a reasonable doubt is so greatly
outweighed as to render the conviction clearly wrong and manifestly unjust. As such, we conclude
that the jury was rationally justified in finding Appellant guilty beyond a reasonable doubt. 
Therefore, we hold that the evidence is factually sufficient to sustain the jury’s verdict. Appellant’s
fourth issue is overruled.

Conclusion
            Having overruled Appellant’s issues one, two, three, and four, we affirm the trial court’s
judgment.
                                                                                                     JAMES T. WORTHEN 
                                                                                                                 Chief Justice


Opinion delivered November 30, 2004.
Panel consisted of Worthen, C.J., Griffith, J. and DeVasto, J.



              


(PUBLISH)