NO. 07-10-00193-CR

 

IN THE COURT OF APPEALS

 

FOR THE
SEVENTH DISTRICT OF TEXAS

 

AT
AMARILLO

 

PANEL A

 



JUNE
14, 2011

 



 

MALCOLM DEAN SCOTT, APPELLANT

 

v.

 

THE STATE OF TEXAS, APPELLEE 



 



 

 FROM THE 242ND DISTRICT COURT OF
HALE COUNTY;

 

NO. B18075-0906; HONORABLE EDWARD LEE SELF, JUDGE



 



 

Before CAMPBELL
and HANCOCK and PIRTLE, JJ.

 

 

MEMORANDUM OPINION

            Appellant,
Malcolm Dean Scott, was convicted by jury of aggravated robbery.[1]  As punishment, appellant was sentenced to
life imprisonment.  Appellant now appeals
challenging the sufficiency of the evidence, the trial court’s exclusion of
evidence of appellant’s acquittal in a previous robbery trial, and the
effectiveness of his trial counsel.  We
will affirm the trial court’s judgment.

 

 

Factual and Procedural History

            On
May 14, 2009, Annadell Quebe
was watching television when a man forcibly entered her home and ran
upstairs.  The intruder was wearing a
“ski-mask-like thing” and gloves and carrying a handgun.  The intruder returned to the first floor and
demanded Quebe’s rings.  He forcibly removed the rings from her hands
and fled the home.  Quebe
then called the Plainview police.

That same night in the same
neighborhood, Vicki Ballard was visiting her sister’s home.  Ballard was in the garage when a man entered
and held a gun to her head.  Ballard
described the man as wearing a “dark-colored greenish toboggan” over his face,
dark clothing, and gloves.  The man
attempted to pull Ballard toward the house and threatened to shoot her.  She struggled with the man and screamed.  The intruder struck her in the head with the
gun and then fled the garage.

The neighboring Brooks family heard
the commotion and Ballard’s distress and came to her aid.  Officer Mike Hurst responded to their 911
call.  Hurst and other PPD officers began
to investigate and learned that Robert Brooks had seen a tan Cadillac driving
through the neighborhood earlier that evening. 
Neighborhood residents Cynthia and Leah Olson informed officers that
they had also seen a tan Cadillac in the neighborhood on their evening
walk.  They first saw the Cadillac when
it turned its headlights off and parked on a residential road.  Before the Olsons
got home, they saw the Cadillac again. 
This time, the Cadillac was about a block away from them.  When the car turned around and began heading
in their direction, the Olsons rushed home where, a
short time later, an unidentified person attempted to gain entry into their
home.

Hurst had also noted a tan Cadillac
on his way to respond to the emergency call. 
As he drove to Ballard’s neighborhood, he had seen a tan Cadillac in an
otherwise empty parking lot and had noted that it seemed out of place.  Responding to an urgent call and not yet
aware that this vehicle may be connected to the home invasions, Hurst continued
without further investigation of the suspicious vehicle in the parking lot.

While these events were occurring in
Plainview, PPD Detective Cindy Vera and Officer Dustin Waters were returning to
Plainview after dropping off a juvenile at a facility in Lubbock.  Vera heard the radio traffic about the
robberies and contacted Hurst and her supervisor, Manuel Balderas.  Vera and Waters were instructed to watch for
a tan Cadillac while en route back to Plainview. 

Soon after receiving this
instruction, Vera and Waters noticed a tan Cadillac headed south on Interstate
27.  The officers turned around to follow
the vehicle.  Vera called the license
plate number of the Cadillac in to dispatch. 
Appellant was the registered owner of the vehicle.  When Vera and Waters caught up to the
vehicle, they observed two occupants.  As
the officers pulled up alongside the car, Vera was able to get a clear view of
the driver.  Because the officers were
approaching Lubbock and losing radio communication with PPD dispatch and
because Vera was not wearing proper safety gear to confront likely armed
suspects, the officers sought assistance from the Lubbock Police
Department.  The LPD obliged and set up a
perimeter around appellant’s listed address. 


Upon arriving in Lubbock and while
still being followed by Vera and Waters, the Cadillac exited the freeway,
re-entered, and then exited again before Vera and Waters lost track of the car
in a residential neighborhood.  Officer
Jacob Flores of the LPD was dispatched to the Beech Street address listed on
the car’s registration.  The Cadillac
arrived at the address, and, as Flores approached the residence, the two black
males exiting the vehicle saw him and fled on foot.  Although he eluded police that evening,
appellant was later arrested.

A search of the vehicle on the night
of May 14th yielded evidence connecting the vehicle and its occupants to the
Plainview robberies.  Vera recovered a
toboggan/ski mask that matched Ballard’s description.  She also recovered appellant’s wallet,
including his state-issued identification card. 
From the identification card photograph, Vera confirmed that it was
appellant whom she had seen driving the vehicle earlier.  Further, some jewelry was recovered from inside
the car but this jewelry could not be connected to Ballard.

Appellant was charged with aggravated
robbery in connection with the attack on Ballard.  After hearing evidence, the Hale County jury
found appellant guilty of aggravated robbery. 
Appellant pleaded true to the State’s enhancement allegations.  After hearing punishment evidence, the jury
assessed punishment at life imprisonment. 
This appeal followed.  Appellant
brings to this Court three issues: sufficiency of the
evidence, exclusion of evidence, and ineffective assistance of counsel. 

Sufficiency of the Evidence

            Appellant
challenges the sufficiency of the evidence to sustain his conviction.

Standard of Review

            In
assessing the sufficiency of the evidence, we review all the evidence in the
light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of
the offense beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); Brooks v. State,
323 S.W.3d 893, 912 (Tex.Crim.App. 2010).  “[O]nly that
evidence which is sufficient in character, weight, and amount to justify a factfinder in concluding that every element of the offense
has been proven beyond a reasonable doubt is adequate to support a
conviction.”  Brooks, 323 S.W.3d
at 917 (Cochran, J., concurring).  We
remain mindful that “[t]here is no higher burden of proof in any trial,
criminal or civil, and there is no higher standard of appellate review than the
standard mandated by Jackson.”  Id.
(Cochran, J., concurring).  When
reviewing all of the evidence under the Jackson standard of review, the
ultimate question is whether the jury’s finding of guilt was a rational
finding.  See id. at 906, 907 n.26 (discussing Judge Cochran’s dissenting
opinion in Watson v. State, 204 S.W.3d 404, 448–50 (Tex.Crim.App.
2006), as outlining the proper application of a single evidentiary standard of
review).  “[T]he reviewing court is
required to defer to the jury’s credibility and weight determinations because
the jury is the sole judge of the witnesses’ credibility and the weight to be
given their testimony.”  Id. at 899.

Analysis

            A
person commits the offense of robbery if, in the course of committing theft and
with intent to obtain or maintain control of the property, he or she (1)
intentionally, knowingly, or recklessly causes bodily injury to another; or (2)
intentionally or knowingly threatens or places another in fear of imminent
bodily injury or death.  Tex. Penal Code Ann. § 29.02. The offense becomes
the first-degree felony offense of aggravated robbery when the actor, inter alia, uses or exhibits a deadly
weapon.  Id. § 29.03(a)(2).

            Appellant’s
contention focuses on the identity element of the offense.  Specifically, appellant claims that there is
insufficient evidence connecting him to the location where Ballard was
attacked.  However, the jury heard
evidence that at least three neighborhood residents saw a tan Cadillac driving
around Ballard’s neighborhood that evening. 
Officer Hurst testified that he, too, saw the vehicle in the
neighborhood as he responded to the emergency calls but was unaware, at that
time, of the vehicle’s significance.  A
vehicle of the same color, make, and model and registered to appellant was
located on the highway heading away from Plainview and toward Lubbock in the
relevant time frame.  Detective Vera
identified appellant as the driver.  The
Cadillac returned to appellant’s address.

            Ballard
identified the toboggan later found in appellant’s car as the same type of
toboggan worn by the man who attacked her. 
The search of appellant’s vehicle also yielded appellant’s wallet
containing his identification card, further connecting appellant to the
vehicle.  Ballard testified that, when
she was shown a videotaped interview with appellant, she recognized his voice
from that night.  Joe Trawicki,
custodian of records and former electronic surveillance team member for a
national cell phone service provider, explained that detailed information from
cell phone towers placed appellant’s cell phone in Plainview at times near the
time of the Ballard robbery. 

From our review of the evidence in
the light most favorable to the verdict, we cannot say the jury’s finding of
guilt beyond a reasonable doubt was an irrational one.  Accordingly, we overrule appellant’s issue. 

 

Exclusion of Evidence of Previous
Acquittal

            Appellant
contends that the trial court abused its discretion when it excluded evidence
that appellant had been acquitted in a previous trial on charges related to the
Quebe robbery.

Standard of Review

            We
review a trial court’s decision to admit or exclude evidence for abuse of
discretion.  Shuffield
v. State, 189 S.W.3d 782, 793 (Tex.Crim.App.
2006).  A trial court does not abuse
its discretion if its decision is within the zone of reasonable
disagreement.  See
Walters v. State, 247 S.W.3d 204, 217 (Tex.Crim.App.
2007); Montgomery v. State, 810 S.W.2d 372, 391 (Tex.Crim.App.
1991) (op. on reh’g).  We will sustain the trial court’s decision if
that decision is correct on any theory of law applicable to the case.  Romero v. State, 800
S.W.2d 539, 543 (Tex.Crim.App. 1990).

Analysis 

Well after admission of evidence
relating to the Quebe robbery, appellant
unsuccessfully sought to introduce testimony from a PPD officer relating to
appellant’s previous acquittal of the Quebe
robbery.  At trial, appellant sought
admission of the acquittal on the basis that such evidence was necessary “to
cure the harm of allowing the jury to consider” evidence of the Quebe robbery without knowing that appellant had been
acquitted.  Looking at the context of his
contention at trial, we see that he cast his position in terms of collateral estoppel, arguing that collateral estoppel
would apply to bar both re-litigation of the Quebe robbery and, by his argument, admission of evidence
connecting appellant to the Quebe robbery.[2]   From this context, we take trial counsel’s
contention as one advancing the position that admission of evidence of the Quebe robbery was harmful error, and that evidence of
acquittal was admissible to cure this harmful error.

On appeal, appellant relies
exclusively on Kerbyson v. State, 711
S.W.2d 289 (Tex.App.—Dallas 1986, pet. ref’d), to support his contention.  In Kerbyson,
the appellant was convicted of criminal mischief.  Id. at 289.  Over appellant’s objection, the trial court
admitted evidence of an extraneous offense of theft for which the appellant had
been acquitted.  Id.
at 290.  Having found that the
trial court erred in admitting evidence of the theft, the Dallas court reversed
the criminal mischief conviction and remanded for a new trial.  Id. 
It would appear from appellant’s reliance on Kerbyson
that he contends evidence of the acquittal was relevant upon admission of extraneous
offense evidence which, though he lodged no objection, was erroneously
admitted.  

The arguments underlying appellant’s
theory of admissibility below and his contention on appeal seem to be distinct
arguments.  That is, at trial, appellant
advanced the argument that the acquittal evidence was necessary to cure the
error committed when the trial court admitted evidence of the robbery even
though admission of such evidence was barred by collateral estoppel.  However, on appeal, it would appear that appellant
contends the acquittal evidence was relevant to explain or rebut the evidence
related to an extraneous offense. 
Arguably, the acquittal may have been relevant but we are not convinced
that the trial court was presented with this contention; appellant sought
admission of the evidence as a curative measure to unobjected-to
error.  Based on our reading of his
contentions, appellant’s complaint on appeal does not appear to comport with
the theory of admissibility he advanced at trial.  See Tex.
R. App. P. 33.1; Pena v. State, 285 S.W.3d 459, 464 (Tex.Crim.App. 2009) (concluding that complaint on appeal
must comport with the complaint made at trial). 
That being so, we conclude that appellant has not preserved his
appellate complaint for our review.  See
Martinez v. State, 91 S.W.3d 331, 336 (Tex.Crim.App.
2002) (pointing out that appellate courts may uphold a trial court’s ruling on
any legal theory or basis applicable to the case, but usually may not reverse a
trial court’s ruling on any theory or basis that might have been applicable but
was not raised).  Accordingly, we
overrule appellant’s issue.

Effectiveness of Counsel

            By
his final issue, appellant contends that trial counsel’s failures in voir dire and at trial rendered his assistance ineffective.  The United States Constitution’s guarantee of
the right to counsel encompasses the right to effective assistance of
counsel.  U.S. Const. amend. VI; Strickland v. Washington, 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).  Included in the constitutionally guaranteed
right to effective assistance of counsel is the right to question prospective
jurors in order to intelligently and effectually exercise peremptory challenges
and challenges for cause during the jury selection process.  See Ex parte
McKay, 819 S.W.2d 478, 482 (Tex.Crim.App. 1990).

Applicable Law and Standard of Review

            In
determining whether counsel’s representation was so inadequate as to violate a
defendant’s Sixth Amendment right to counsel, Texas courts apply the
two-pronged test enunciated in Strickland, 466 U.S. at 687.  See Hernandez v. State, 726 S.W.2d 53, 55 (Tex.Crim.App.
1986).  Judicial review of an ineffective
assistance of counsel claim must be highly deferential, and there is a strong
presumption that counsel’s conduct fell within the wide range of reasonable
professional assistance.  Strickland,
466 U.S. at 689.  An appellant bears the
burden of proving by a preponderance of the evidence that (1) counsel’s
representation fell below an objective standard of reasonableness and (2) the
deficient performance prejudiced the appellant. 
Freeman v. State, 125 S.W.3d 505, 511 (Tex.Crim.App. 2003). 
Failure to make the required showing of either deficient performance or
sufficient prejudice is fatal to an ineffectiveness claim.  See id.  

            In
the majority of cases, the record on direct appeal is undeveloped and cannot
adequately reflect the motives behind trial counsel’s
actions.[3]  Mallett v. State, 65 S.W.3d 59, 63 (Tex.Crim.App.
2001).  The Texas Court of
Criminal Appeals has recognized that appellate courts can rarely decide the
issue of ineffective assistance of counsel because “the appellate record rarely
speaks to the strategic reasons that counsel may have considered.”  Aldrich, 104 S.W.3d
at 896.  Only rarely, when “trial
counsel’s ineffectiveness is so apparent from the record,” may an appellant’s
ineffective assistance claim prevail on direct appeal.  Freeman, 125 S.W.3d at 507 (quoting Massaro v. United States, 538 U.S. 500, 155 L.Ed. 2d 714, 123 S.Ct. 1690
(2003)).  Reviewing courts “commonly
assume a strategic motive if any can be imagined” and will conclude that
counsel’s performance was “deficient only if the conduct was so outrageous that
no competent attorney would have engaged in it.”  Andrews v. State,
159 S.W.3d 98, 101 (Tex.Crim.App. 2005).

Analysis

With respect to appellant’s
contentions regarding trial counsel’s failure to ask follow-up question during voir dire, we conclude that appellant has failed to show
that counsel’s performance fell below an objective standard of
reasonableness.  Trial counsel’s
questions during voir dire may be dictated by trial
strategy.  Jackson
v. State, 491 S.W.2d 155, 156 (Tex.Crim.App.
1973).  Trial counsel’s failure to
ask questions appellate counsel deems important does not mean that trial
counsel’s performance was deficient.  See
Goodspeed v. State, 187
S.W.3d 390, 392 (Tex.Crim.App. 2005).  In fact, the failure to ask any questions during voir
dire may be a reasonable trial strategy when trial counsel believed that the
State’s questions addressed his concerns. 
See id.  The Texas
Court of Criminal Appeals reiterated that, when looking at an ineffective
assistance claim based on voir dire examination, the
failure to ask certain questions–or any questions–must “amount to behavior that
is so outrageous, no competent attorney would have engaged in it.”  Id. at 392.  Especially when the complained-of questions
involved subject matter that has already been covered, the decision to forego
posing questions on the same subject may be characterized as sound trial
strategy.  See id.; Beck
v. State, 976 S.W.2d 265, 267 (Tex.App.—Amarillo
1998, pet. ref’d); Williams v. State, 970
S.W.2d 182, 184 (Tex.App.—Houston [14th Dist.] 1998,
pet. ref’d).

Appellant maintains that trial
counsel should have asked follow-up questions regarding potential biases or
prejudices on punishment issues.  The
record reveals that the State engaged in a fairly extensive,
five-and-a-half-page exchange on general punishment issues including the
bifurcated nature of the trial and the distinctions between the issues and evidence
covered in each phase of the trial.  From
the State’s thorough discussion of and examination on punishment issues and the
panel’s answers to the State’s questions, trial counsel could have been
reasonably satisfied that punishment issues had been adequately explored.  Further, our review of trial counsel’s
questions during voir dire reveals a rather extensive
examination on issues other than punishment-related biases or prejudices.  That trial counsel chose to focus his
examination on other issues, including attitudes toward crime and issues
concerning the credibility of eyewitnesses and investigation techniques, is a
reasonable trial strategy which we will not second-guess on appeal.  See Beck, 976
S.W.2d at 267.

During the State’s voir dire examination, it was revealed that several prospective
jurors had some knowledge of or some relationship with identified witnesses in
the trial.  Appellant focuses on the
answers of two venire members who later served on the jury.  One venireperson
explained that Leah Olson was a good friend of the venireperson’s
daughter but explained that she did not “think it would cause any
problems.”  The State continued to
explore the impact of the relationship between venireperson
and witness:  [W]ould
you be able to judge those people’s testimony as you
would anybody else, judge their credibility as to how they testify here in the
trial?”  The venireperson
answered affirmatively.  Another venireperson explained that she knew Cynthia Olson from
church but answered “no” when asked whether that relationship would cause her a
problem with sitting on the jury.  Again,
both venire members ultimately sat on the jury.

The record establishes that the State
explored the impact of the relationships between the venire members and
witnesses.  Trial counsel could have
reasonably concluded that the State’s questions and the venire members’ answers
on the matter gave fair assurance that the venire members would not be biased
by their knowledge of or relationship with the witnesses.  See Goodspeed,
187 S.W.3d at 392; Beck, 976 S.W.2d at
267.  Trial counsel may have been
satisfied with the venire members’ unequivocal answers to the State’s questions
and may have chosen to spend his time and effort during voir
dire on other matters he deemed more relevant and yet unexplored.  In fact, trial counsel explained in his
introductory remarks to the venire that he intended to do just that:  “I’m going to also try not to cover over the
same topic [the State’s attorney] covered; sometimes I will.”  Again, trial counsel’s voir
dire examination appears thorough, and we will not review his decisions in
hindsight to conclude that he should have revisited issues already covered
during voir dire. 
See Beck, 976 S.W.2d at 267 (refusing to
undertake the task of micromanaging trial counsel’s
actions).  

Next, we address the claim that trial
counsel’s performance was rendered deficient by his failure to object to
evidence of the Quebe robbery.  As the record suggests, counsel may have
anticipated being able to introduce evidence of the acquittal on charges
related to the Quebe robbery.  Though, ultimately, such strategy was
unsuccessful, we cannot say that such an attempt was not a reasonable trial
strategy.  The record could be read to
support the contention that trial counsel’s best chance at getting in the
acquittal was to permit the incriminating evidence in first.  Because we can imagine at least a plausible,
albeit ultimately unsuccessful, trial strategy, we cannot conclude that trial
counsel’s performance fell below an objective standard of reasonableness.  See Ex parte Ellis, 233 S.W.3d
324, 331 (Tex.Crim.App. 2007) (observing that
defensive course was “risky” but was not so unreasonable that no trial attorney
would pursue such a course).

Given that trial counsel’s
actions could have been reasonably construed as trial strategy, the record does
not affirmatively demonstrate ineffectiveness of counsel, and we overrule
appellant’s final issue. 

Conclusion

            Having
overruled appellant’s issues, we affirm the judgment of the trial court.

 

 

                                                                                                Mackey
K. Hancock

                                                                                                            Justice

Do
not publish.  

 

Pirtle,
J., concurring.  












[1] See Tex.
Penal Code Ann. §§ 29.02,
29.03 (West 2003).





[2] We note that appellant made no objection, in
terms of collateral estoppel or otherwise, to
admission of evidence related to the Quebe robbery.  Collateral estoppel
is generally employed in this situation as a basis for excluding evidence of an
extraneous offense.  That is, generally speaking,
evidence of an extraneous offense for which a defendant has been acquitted has
generally been held inadmissible under the Double Jeopardy Clause of the United
States and Texas constitutions and under the doctrine of collateral estoppel.  See
Ashe v. Swenson, 397 U.S. 436, 445–46, 90 S.Ct.
1189, 25 L.Ed. 2d 469 (1970); Dedrick v. State,
623 S.W.2d 332, 336 (Tex.Crim.App. [Panel Op.]
1981).  However,
evidence of an extraneous offense for which a defendant has been acquitted may
be introduced into evidence against the defendant in a subsequent trial where
the prior acquittal did not determine an ultimate issue in the subsequent
case.  Dowling v. United States,
493 U.S. 342, 348, 110 S.Ct. 668, 672, 107 L.Ed. 2d 708
(1990); Dunklin v. State, 194 S.W.3d 14, 24 (Tex.App.—Tyler
2006, no pet.).





[3]
The proper vehicle for
raising such a claim is almost always an application for writ of habeas
corpus.  Aldrich v.
State, 104 S.W.3d 890, 896 (Tex.Crim.App. 2003).